Argued and submitted May 5, decision of Court of Appeals affirmed in part and reversed in part, judgment of circuit court affirmed October 5, 1998

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## TEDDY HALL,
*Respondent on Review.*

## (CC C9406-34332; CA A87453; SC S44712)

966 P2d 208

Erika L. Hadlock, Assistant Attorney General, Salem, argued the cause for petitioner on review. David B. Thompson, Assistant Attorney General, filed the petition. With him on the petition were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Steven V. Humber, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With him on the brief was Sally L. Avera, Public Defender.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Leeson, Justices.**

LEESON, J.

Durham, J., dissented and filed an opinion.

---

**Kulongoski, J., did not participate in the consideration or decision of this case.

## LEESON, J.

In this criminal case involving multiple charges, a jury convicted defendant of two counts of robbery in the first degree, ORS 164.415, one count of robbery in the third degree, ORS 164.395, and one count of felon in possession of a firearm, ORS 166.270. The Court of Appeals reversed defendant's conviction for robbery in the third degree and affirmed his other convictions. *State v. Hall*, 149 Or App 358, 942 P2d 882, *modified on recons* 149 Or App 757, 944 P2d 1000 (1997). We allowed review to determine whether the trial court erred in denying defendant's motion for judgment of acquittal on the count of third-degree robbery. For the reasons that follow, we conclude that the trial court did not err. The Court of Appeals' contrary holding on that count is reversed, and its decision otherwise is affirmed.

■ We view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994). The issue is not whether we believe defendant is guilty beyond a reasonable doubt, but whether there was sufficient evidence for a jury to so find. *State v. Rose*, 311 Or 274, 281, 810 P2d 839 (1991). When analyzing the sufficiency of the evidence, we make no distinction between direct and circumstantial evidence as to the degree of proof required. *State v. Lerch*, 296 Or 377, 396, 677 P2d 678 (1984).

Defendant walked into the McDonald's restaurant at Jantzen Beach on June 21, 1994, at about 10:40 p.m., twenty minutes before the restaurant closed for the night. He wore a leather jacket over his clothing and a bandana on his head that covered his hair completely. Although it was late at night, he also had on sunglasses.

Defendant went to the counter near a cash register. He saw Ahyek, an employee, standing at the end of the counter. He made a motion to her with his hand and told her to "Come here." Ahyek walked toward defendant and stood directly across the counter from him near the cash register. As she stood across from him, defendant said to Ahyek, "Put

all of the money into this bag. I want all of your money." He held out a small paper bag that he had brought into the restaurant with him. Ahyek opened the top drawer of a cash register and gave defendant all the money in it. Defendant told her, "No, I want what is underneath." Ahyek reached beneath the drawer and gave defendant the money that was there. Defendant still was not satisfied that Ahyek had given him all the money. He told her, "No. I want what is in the other drawers." Ahyek pulled the cash drawers out of the other cash registers and set them on the counter to show defendant that she "didn't have anything else." Defendant took the money and left the restaurant. On his way out, defendant told Atkinson, a maintenance worker, not to follow him. Ahyek called the police, who arrested defendant several days later. He was indicted for robbery in the third degree.

Defendant represented himself at trial. Just before instructing the jury, the court *sua sponte* raised the issue of whether the state had presented sufficient evidence to support a conviction for robbery in the third degree. ORS 164.395(1) defines robbery in the third degree:

"(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft the person uses or *threatens the immediate use of physical force* upon another person with the intent of:

"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft." (Emphasis added.)

In response to the trial court's having raised the issue, defendant moved for judgment of acquittal, on the ground that he had not said any threatening words to Ahyek or made any threatening gestures towards her. The trial court denied the motion, concluding that "[t]he circumstances may give rise to the threat." In a unanimous verdict, the jury found defendant guilty of robbery in the third degree.[1]

---

[1] The jury also found defendant guilty of other charges that are not at issue in this appeal.

On appeal, defendant assigned error to the trial court's denial of his motion for judgment of acquittal, arguing that the state had presented insufficient evidence to convict him of third-degree robbery, because he did not use actual force or threaten the immediate use of physical force against Ahyek. The state responded that an implied threat is sufficient to establish robbery in the third degree and that a rational trier of fact could find that defendant's demand to Ahyek to give him all the money carried with it an implied threat that defendant would use physical force if Ahyek refused to comply.

A two-judge majority of the Court of Appeals agreed with defendant. The majority concluded that the trial court erred in denying defendant's motion for judgment of acquittal, because "[t]here is *no evidence* that defendant made verbal threats or engaged in conduct that indicated that he would, in fact, immediately resort to physical force unless his demand was met." *Hall*, 149 Or App at 365 (emphasis added). Chief Judge Deits dissented, arguing that, considering the entire circumstances, there was sufficient evidence from which a rational jury could infer that defendant *implicitly* had threatened to use immediate physical force against Ahyek if she did not comply with his demands. *Id.* at 368.

On review, the questions are what the legislature intended by the phrase, "threatens the immediate use of physical force upon another person," in ORS 164.395(1), and whether the trial court erred in denying defendant's motion for judgment of acquittal on the charge of robbery in the third degree, because the state failed to present sufficient evidence to permit the jury to find that defendant had threatened the immediate use of physical force on Ahyek if she did not comply with his demands.

■ The first inquiry is a matter of statutory construction. In construing a statute, our task is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). We begin with the statute's text and context and give words of common usage their "plain, natural, and ordinary meaning." *Id.* at 610-11.

The criminal code does not define the word "threatens" as used in ORS 164.395(1). However, the dictionary defines the word "threaten" as follows:

"**1** : to utter threats against: promise punishment, reprisal, or other distress to * * * **2** * * *: to charge under pain of punishment: WARN * * * **3** : to promise as a threat: hold out by way of menace or warning * * * **4a** : to give signs of the approach of (something evil or unpleasant): indicate as impending : PORTEND * * * **b** : to hang over as a threat : MENACE * * * **5** : to announce as intended or possible * * *." *Webster's Third New Int'l Dictionary*, 2382 (unabridged ed 1993).

The dictionary definition indicates that the act of threatening another person can be *explicit* (such as uttering threats) or *implicit* (such as giving signs of the approach of something evil or unpleasant). That conclusion is supported by examining the dictionary definition of the noun "threat," which is used repeatedly in the definition of the verb threaten. A "threat" is:

"1: an indication of something impending and usu. undesirable or unpleasant * * * as a: an expression of an intention to inflict evil, injury, or damage on another usu. as retribution or punishment for something done or left undone * * * b: expression of an intention to inflict loss or harm on another by illegal means and esp. by means involving coercion or duress of the person threatened ([threats] inducing fear of bodily harm are often cause of legal action even in the absence of overt violence) 2: something that by its very nature or relation to another threatens the welfare of the latter * * *." *Id.*

Like the act of threatening, a threat can be *explicit* (an expression of an intention to inflict harm or loss on another) or *implicit* (something that by its nature or relation to another announces that a person's welfare is in danger). Whether a person implicitly threatens another in the course of an encounter depends on the reasonable inferences that the factfinder can draw from that encounter.

ORS 164.395(1) requires that, in the course of committing or attempting to commit theft, a defendant use or threaten to use immediate physical force on another person with the intent of preventing or overcoming resistance to the

taking of property or compelling the person to deliver property. Having concluded that the act of threatening can be explicit or implicit, the next inquiry is whether, under ORS 164.395(1), a person who demands that the victim deliver property, or not resist the taking of property, implicitly can threaten the immediate use of physical force if the victim does not comply. The answer to that question is yes. If the context in which the demands were made supports a reasonable inference that the person implicitly threatened the immediate use of physical force if the victim did not comply, a trial court does not err in denying a motion for judgment of acquittal on robbery in the third degree.

■　We turn to the facts of this case. Defendant came into the restaurant late at night, just before its closing time, dressed in a manner that disguised his identity. He does not contest that his purpose in coming into the restaurant was to obtain money. He made a series of demands on Ahyek while she was standing close to him: While making a gesture to Ahyek, defendant told her to "Come here" and, when she was standing across the counter from him, near a cash register, told her to put all the money into the bag that he was carrying. After Ahyek put the money from the drawer of the cash register into the bag, defendant told her to give him the money underneath the cash drawer. He then told her that he wanted the money in the other cash registers as well.

From the facts of this case, a jury reasonably could infer that, if Ahyek did not comply with defendant's demands to give him all the money, he would reach across the counter and take the money that he had demanded and that he immediately would use physical force against Ahyek if she tried to stop him from doing so. A jury also reasonably could infer that, if Ahyek did not comply with defendant's demands, he immediately would use physical force on her to compel her to give him the money. Finally, a jury could infer that, if Ahyek did not comply with defendant's demands, he would abandon his intent to commit theft and simply leave the restaurant. Any of those inferences is reasonable; therefore, it was appropriate to allow the jury to decide the question. Consequently, the trial court did not err in denying defendant's motion for judgment of acquittal on the count of robbery in the third degree.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.

**DURHAM, J.,** dissenting.

Without question, defendant committed serious criminal conduct when he entered the restaurant, told the cashier to put the restaurant's money into his bag, and fled. The legal question before the court is whether the evidence was sufficient to support the charge of robbery in the third degree. The parties disagree about whether the evidence would permit a jury to find beyond a reasonable doubt that, in the course of committing theft, defendant "threaten[ed] the immediate use of physical force upon another person" within the meaning of ORS 164.395(1).[1] The task of statutory interpretation is particularly important here because the statutory requirement of proof that the perpetrator "use[d] or threaten[ed] the immediate use of physical force upon another person" while committing theft is common to all statutes that define the degrees of robbery. *See* ORS 164.405(1); ORS 164.415(1).

In view of the importance of a proper legal analysis of that question, the opinion offered by the majority is a disappointment. Two critical methodological mistakes, identified below, lead the majority into legal error. Because the majority's errors concern methodology, and because the majority opinion does not clarify the point, the reader is left to guess whether this case exhibits an analysis that affects only this case or, instead, represents a change in the way that the court goes about resolving statutory interpretation and sufficiency of evidence problems. In either case, the majority's rationale is incorrect.

The majority's first error occurs in its attempt to interpret the word "threaten." The majority properly quotes the following dictionary definition of the verb "threaten":

---

[1] The question here concerns the meaning of one element of the robbery statute, ORS 164.395(1). The question is not whether Oregon's law should treat defendant's conduct as "robbery" rather than "theft," as those terms commonly might be understood. The legislature possesses broad authority to include a host of criminal activities, including defendant's conduct here, within a statutory definition of robbery if it so desires.

"**1** : to utter threats against: promise punishment, reprisal, or other distress to * * * **2** * * *: to charge under pain of punishment: WARN * * * **3** : to promise as a threat: hold out by way of menace or warning * * * **4a** : to give signs of the approach of (something evil or unpleasant): indicate as impending : PORTEND * * * **b** : to hang over as a threat : MENACE * * * **5** : to announce as intended or possible * * *."

*Webster's Third New Int'l Dictionary*, 2382 (unabridged ed 1993).

From that definition, the majority draws the conclusion that the act of threatening another can be explicit or implicit. I agree with that conclusion. For example, if defendant had displayed a clenched fist to Ahyek, that would satisfy the requirement of the robbery statute that he "threaten" to use force on another person immediately, even if he made no explicit statement that he would strike her if she failed to comply with his demands.

Having observed that the act of threatening may be explicit or implicit, the majority ceases its analysis of the definition of the term "threaten." The majority turns, instead, to the definition of the term "threat," finds further support for its already-stated conclusion that a threat may be explicit or implicit, and concludes that an "implicit" threat is "something that by its nature or relation to another announces that a person's welfare is in danger." 327 Or at 573. That analysis is flawed.

The term set forth in ORS 164.395(1) is the verb "threaten," not the noun "threat." A verb expresses action. *Every* usage in the dictionary for the verb "threaten" states that that term describes *communicative action*, that is,

"to *utter* threats * * * [to] *promise* punishment * * * to *charge* under pain of punishment : WARN * * * [to] *hold out* by way of menace or warning * * * to *give signs* of the approach of (something evil or unpleasant) : *indicate* as impending : PORTEND * * * to *hang over* as a threat : MENACE * * * *to announce* as intended or possible."

*Webster's* at 2382 (emphasis added). The emphasized portions of the dictionary definition deserve analysis, but the

majority ignores them. Those portions of the definition demonstrate that the statutory term "threaten" requires proof of *communicative action* by defendant that, by word or conduct, utters, warns, promises, portends, or menaces the immediate use of physical force upon another person.

The majority's attempt to analyze the noun "threat" in this context is misleading. The word "threat" does not appear in the statute. The majority's effort improperly draws the court's attention away from the statutory term that the court must interpret.

Ultimately, the majority adopts definitional reasoning that can only be described as circular. First, it defines " 'implicit' threat" as "something" that announces a threatening message. The noun "threat" *is* a "something," but saying so does not advance the legal interpretation of the verb "threaten." Second, the majority says that an "implicit" threat is one that arises from something that "by its nature or relation to another *announces* that a person's welfare is in danger." *Hall*, 327 Or at 573 (emphasis added). The majority does not quote the illustrations that accompany the portion of the definition of "threat" on which it bases that statement. The full definition states:

> "**2** : something that by its very nature or relation to another threatens the welfare of the latter ‹the crumbling cliff was a constant [threat] to the village below› ‹economic depressions constitute a major [threat] to party hegemony— C.A.M. Ewing›."

*Webster's* at 2382. Those illustrations demonstrate that the usage of "threat" on which the majority relies has nothing to do with defining threatening conduct by a person and furnishes no assistance in identifying the distinction, on which the majority places heavy reliance, between an explicit and an implicit announcement of a threat. The majority's attempt to analyze the definition of "threat" leaves it no closer to an explanation of why defendant's behavior meets any of the dictionary definitions of "threaten."

Moreover, in creating its paraphrased definition of an "implicit" threat, the majority replaces the dictionary's verb "threaten" with the verb "announce." Those terms are

synonyms. Taken together, they illustrate my point. The statute requires some form of communicative behavior that conveys the actor's intention immediately to use physical force. In my view, *any* word or action that announces the required message, either explicitly or implicitly, would suffice to support a conviction. Although the majority's definition of an implicit threat expressly requires conduct that *announces* the message described in the statute, the majority fails to apply its own definition. The majority never identifies the word or act by defendant that *announced* his intention to use force immediately during the episode. The majority's approach simply dodges defendant's argument and necessarily will mislead or confuse judges and lawyers who must apply the majority's definition in the future.

There is, however, a more serious problem beneath the surface of the majority's attempt to analyze statutory text. Ordinarily, when it considers dictionary definitions of statutory terms, the court evaluates *all* relevant definitions and endeavors to draw meaning from *all* of them. The premise for that exercise is that the definitions — *all* of them — may disclose the plain, natural, and ordinary meaning of the statutory term in question. If the court can discern a statutory term's plain meaning, and nothing in the statute's context creates a plausible doubt about whether the legislature intended that meaning, the court will adopt that plain meaning as the correct interpretation of the statutory term. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (in analyzing statutory text, words of common usage should be given their plain, natural, and ordinary meaning; if the legislature's intent is clear from an analysis of text and context, further inquiry is unnecessary).

Without explanation, the majority adopts a different approach here. It conducts no analysis of the meaning conveyed by each of the dictionary definitions of "threaten." As noted, those definitions uniformly require communicative action, that is, some act that, in this context, *conveys* the threat of the immediate use of physical force on another person. Instead, the majority selects a single definition of a different term, "threat," *i.e.*, "something that by its very nature or relation to another threatens the welfare of the latter." Aside from substituting the word "threaten" with the word

"announce" in its definition of an "implicit" threat, the majority never returns to the long list of *other* definitions of "threaten" that all require *some* form of communicative action to convey the threat. Instead, the majority treats its alteration of one definition of the noun "threat" as the plain meaning of the verb "threaten." That is not how this court determines the plain meaning of a key term in a statute.

The majority's approach indicates, incorrectly, that this court will determine a statutory term's plain meaning by examining only one dictionary usage even though other usages listed in the dictionary are relevant and more completely and accurately describe the term's plain meaning. The majority never explains why it declines to consider and analyze the complete definition of the statutory term "threaten." In short, the majority ceases the task of statutory interpretation long before that work is done.

One example illustrates my point. In *State v. Chakerian*, 325 Or 370, 938 P2d 756 (1997), the court interpreted the phrase "tumultuous and violent conduct" in ORS 166.015. The court quoted and analyzed *all* relevant dictionary definitions for the terms "tumultuous," "violent," and "conduct." *Chakerian*, 325 Or at 377-78. The court concluded that the definitions conveyed common and well-understood meanings, and that the statutory context confirmed that the legislature intended to adopt those meanings. *Id.* at 379-80. Only after conducting that complete analysis did the court conclude that the statute's meaning was clear. *Id.* at 380.

The majority's mistake in statutory interpretation leads to the second methodological error concerning the assessment of substantial evidence to support the verdict. The majority correctly concludes that "[w]hether a person implicitly threatens another in the course of an encounter depends on the reasonable inferences that the factfinder can draw from that encounter." *Hall*, 327 Or at 573. That test requires an evaluation of defendant's communicative actions in the restaurant, such as his orders and gestures to Ahyek. In my view, none of those actions explicitly or implicitly communicated, or even referred to, any plan or intention by

defendant to use force on Ahyek, either immediately or at any other time.

The majority points instead to facts that describe the atmosphere of the crime, including the time of day and defendant's manner of dress. I agree that a person's clothing *can* convey information about the wearer in a variety of circumstances (*e.g.*, a gang affiliation), but nothing in the record about defendant's clothing, when considered alone or in the context of defendant's communicative actions and the time of day, conveyed the specific threat that ORS 164.395 requires.

The majority ultimately concludes that its speculative guesses about the potential for violence from defendant's crime constitute evidence that defendant *did threaten* to use force during his crime. I am aware of no precedent that approves the assessment of substantial evidence of threatening conduct in that manner, and the majority cites none.

The statutory requirement that defendant "threaten" the immediate use of physical force calls for an evaluation of evidence in the record about *what defendant did* to determine whether he conveyed the required threat. That requirement does not authorize the court to fabricate hypothetical scenarios about *what defendant might have done* if the victim had not complied with his directives. To state the obvious, the record contains no evidence about other possible reactions by either defendant or Ahyek because those reactions never happened. The majority's claim that it is drawing "reasonable inferences" about defendant's conduct cannot supply the missing link between the act that the statute requires ("threatens") and the evidence in this case. The rationale offered by the majority to support its result fails to withstand legal analysis. The Court of Appeals captured my point precisely:

> "* * * At the very least, however, an 'implied threat' must mean something more than the circumstantial potential for violence that exists in every personal theft. Otherwise, 'threatens the immediate use of physical force upon another person' would, as a practical matter, be read out of the statute. *Accord* ORS 174.010 (in construing a statute, a court shall not 'insert what has been omitted, or [ ]omit what has been inserted').

"\* \* \* \* \*

"It cannot be gainsaid that here, as in every personal theft, there was a generic potential for violence. That circumstantial potential is not, however, sufficient, without more, to establish the statutorily prescribed threat of the 'immediate use of physical force upon another person.' "

*State v. Hall*, 149 Or App 358, 366-67, 942 P2d 882 (1997) (footnote omitted).

For the reasons stated above, I conclude that the Court of Appeals did not err in deciding that the state failed to submit evidence from which a jury could find, beyond a reasonable doubt, that defendant had threatened anyone with the immediate use of physical force. Ahyek reasonably could be frightened by defendant's criminal behavior and by the atmosphere surrounding the incident. However, I am compelled to agree with the Court of Appeals that that understandable fear does not serve as a substitute for proof that defendant threatened her with the immediate use of physical force as required by ORS 164.395(1).

I dissent.