Submitted March 26; resubmitted en banc December 9, 2009, affirmed
March 3, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

COREY DENNIS MARSHALL,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR060570; A135603

227 P3d 786

Peter Gartlan, Chief Defender, and Mary Shannon Storey, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Rolf C. Moan, Acting Solicitor General, and Linda Wicks, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges, and Edmonds, Senior Judge.

ORTEGA, J.

Brewer, C. J., concurring.

Sercombe, J., dissenting.

**ORTEGA, J.**

Defendant appeals from a judgment of conviction for two counts of first-degree sexual abuse, ORS 163.427, and one count of coercion, ORS 163.275. He assigns error to the trial court's denial of his motion for a judgment of acquittal on the sexual abuse counts, contending that the state failed to prove the "forcible compulsion" element of those counts.[1] We review the denial of a motion for a judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). We affirm.

In the light most favorable to the state, these are the facts, taken from the victim's testimony and from others' testimony about her description of the events in the days immediately after they occurred. At the time of the charged acts, the victim was 14 years old. Defendant, a 27-year-old friend of the victim's mother, was living in the victim's family's home.

One Saturday morning, the victim was asleep in her bedroom in a bed that was pushed up against a wall. She was wearing a t-shirt and sweatpants. She awoke with defendant "on top of her trying to kiss her, and get her to do things, sexual things" and "she just kept telling him no, trying to push him away." Defendant had never done anything like that before, and the victim "was wondering what he was doing" and felt "[a] little bit" scared. Defendant positioned himself on the side of the bed away from the wall, so that the victim was between him and the wall.[2]

After rubbing her back on the outside of her shirt, defendant took hold of the victim's hand, placing it between them. Defendant "asked her about her last boyfriend, and asked her if she ever had sex with him." The victim told

---

[1] Defendant also assigns error to the imposition of consecutive sentences. His arguments on that assignment are disposed of by *Oregon v. Ice*, 555 US ____ , 129 S Ct 711, 172 L Ed 2d 517 (2009).

[2] There is conflicting evidence in the record as to which side of the bed defendant was on. The jury was entitled to credit the evidence indicating that he was on the side away from the wall.

defendant "that she hadn't had a boyfriend, and he asked her if she wanted—she wanted him to help her get over her fears * * *." She told him no. Despite her answer, defendant "grabbed her hand and forced it down his pants," making her feel his erect penis.

The victim said no again, pulled her hand away, rolled over on her stomach, and turned her head away from defendant. He remained in her bed, however, and began rubbing her back again, this time under her shirt, focusing on the area from the middle to lower back. He then reached under her pants and touched her buttocks. After a few seconds, the victim "told him no, and kind of scooted over towards the wall," and defendant removed his hand.

Defendant told the victim five or six times that she could not tell anyone about the incident and that, if she did, he would hurt someone close to her. After about 10 minutes, defendant got out of the victim's bed and left her room.

The victim did not want defendant in her bed. She would not have put her hand down defendant's pants of her own volition, nor did she want to have defendant's hand down her pants.

Defendant was charged with first-degree sexual abuse as to both incidents—(1) causing the victim to touch his penis and (2) touching the victim's buttocks. As pertinent here, ORS 163.427(1) provides:

"A person commits the crime of sexual abuse in the first degree when that person:

"(a)   Subjects another person to sexual contact and:

"* * * * *

"(B)   The victim is subjected to forcible compulsion by the actor[.]"[3]

ORS 163.305(2) defines "forcible compulsion" as follows:

" 'Forcible compulsion' means to compel by:

---

[3] "Sexual contact" refers to "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6).

"(a)    Physical force; or

"(b)    A threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped."

■■        Defendant contends that there is insufficient evidence of physical force as to both counts. In his view, although the statute does not require that the victim must resist the offender, in order "to commit sex abuse in the first degree by forcible compulsion involving physical force, an offender must apply strength or energy to the victim's body that overcomes the victim's unwillingness or resistance to engage in sexual contact." He contends that there was no evidence that would allow a rational trier of fact to find that defendant used physical force to overcome any resistance or unwillingness to engage in the sexual contacts.

The state responds that defendant's argument implicitly assumes that the victim must resist in some way, but the legislature expressly removed the requirement of resistance from the definition of "forcible compulsion." The state argues that "forcible compulsion by means of physical force occurs when a person obtains a response by using strength or power of any degree, without justification or contrary to law." In the state's view, the evidence was sufficient for the jury to find that defendant used forcible compulsion.

■        This case presents a question of statutory interpretation. To discern legislative intent, we begin by examining the statutory text and context and, if it appears useful to the analysis, any legislative history offered by the parties. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Because ORS 163.427(1) requires both "sexual contact" and "forcible compulsion," the element of "forcible compulsion" is distinct from the element of "sexual contact"—that is, "forcible compulsion" means something more than a physical touch to which the victim does not consent. Here, the presence of "forcible compulsion" also separates the crimes of first-degree and third-degree sexual abuse. ORS 163.427(1); ORS 163.415(1). We conclude that, under the plain meaning of ORS 163.427 and ORS 163.305, physical force constitutes

forcible compulsion if it is sufficient to compel the victim to engage in or submit to sexual contact.

Both "compel" and "compulsion" communicate a sense that a person is forced to do or to submit to something against her will. The noun "compulsion" commonly means:

> "1 **a** : an act of compelling : a driving by force, power, pressure, or necessity * * * ‹acting under ~, not on his own free will› **b** : a force or agency that compels * * * **c** : a condition marked by compelling, by forced action or assent ‹peonage is service to a private master at which a man is kept by bodily ~ against his will * * *›."

*Webster's Third New Int'l Dictionary* 468 (unabridged ed 2002). The related verb "compel" means:

> "1 : FORCE, DRIVE, IMPEL: as **a** : to force by physical necessity or evidential fact * * * **2 a** : to force or cause irresistibly : call upon, require, or command without possibility of withholding or denying * * * **3 a** : to domineer over so as to force compliance or submission : demand consideration or attention ‹nobody will ~ you; you are perfectly free * * *› **b** : to obtain (a response) by force, violence, or coercion ‹~ assent at the point of a gun›."

*Id.* at 463.

That sense is consistent with the idea of compulsion by "physical force." "Physical" commonly means "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary : MATERIAL, NATURAL * * * of or relating to the body ‹~ strength›—often opposed to *mental*." *Id.* at 1706. The common meaning of the term "force" includes:

> "1 **a** : strength or energy esp. of an exceptional degree : active power : VIGOR * * * **c** : power to affect in physical relations or conditions ‹the ~ of the blow was somewhat spent when it reached him› ‹the rising ~ of the wind› * * * **3 a** : power, violence, compulsion, or constraint exerted upon or against a person or thing * * * **b** : strength or power of any degree that is exercised without justification or contrary to law upon a person or thing **c** : violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death."

*Id.* at 887. Thus, "physical force" commonly refers to a material or bodily strength or power that is exerted against a person.

The word "force" is close in meaning to the word "compulsion." A usage note lists as synonyms for the noun "force" the words "VIOLENCE, COMPULSION, COERCION, DURESS, CONSTRAINT, RESTRAINT" and goes on to explain that

> "FORCE is a general term for exercise of strength or power, esp. physical, to overcome resistance ‹there is the *force* used by parents when . . . they compel their children to act or refrain from acting in some particular way. There is the *force* used by attendants in an asylum when they try to prevent a maniac from hurting himself or others. There is the *force* used by the police when they control a crowd . . . there is the *force* used in war—Aldous Huxley› * * * COMPULSION is applicable to any power or agency that compels, that makes an individual follow a will not his own ‹*compulsion* exists where a being is inevitably determined by an external cause—Frank Thilly› ‹masterpieces I read under *compulsion* without the faintest interest—Bertrand Russell›."

*Id.* (italics in original; underscoring added).

Although "force" is commonly used to refer to an exercise of strength or power to overcome some sort of resistance, the legislature chose to separate the idea of compulsion from the requirement of resistance. It eliminated an older statutory requirement of force "that overcomes earnest resistance" and added the phrase "to compel by" to the definition of "forcible compulsion." Or Laws 1999, ch 949, § 1. Dale Penn, testifying on behalf of the Oregon District Attorneys Association in support of the amendment, cautioned against making further amendments that would place a burden on the victim to resist. Audio Recording, Senate Committee on Judiciary, SB 944, Apr 26, 1999, at 1:24:40, http://www.leg.state.or.us/listn/ (statement of Dale Penn) (accessed Feb 24, 2010). Under the plain meanings of the pertinent words in the context of that legislative choice, to compel a person by "physical force" means to exercise physical strength or power that causes the person to act or to submit to being acted upon against the person's will.[4] Victim resistance is not required.

---

[4] We do *not* hold or imply, as the dissent contends, 234 Or App at 169 (Sercombe, J., dissenting), that "*any* predicate and untoward touching of the

■ The level of physical force that is sufficient to cause a victim to engage in sexual contact against the victim's will depends on the circumstances of the offense, including the characteristics of the assailant and the victim and the relationship between them; the assailant's conduct leading to the offense; and the time and location of the offense. The level of force that is sufficient to overcome the victim's will is lower in some circumstances than in others.

The more mechanical test proposed by the dissent finds no support in the statutory text. The formulation that "physical facilitation" includes situations "where the victim could not avoid the sexual contact because of the application of force," 234 Or App at 172 (Sercombe, J., dissenting), implicitly imposes the very resistance element that the legislature abolished. And the interpretation that the statute requires "a distinct application of physical force on the victim that allows the sexual contact to occur," *id.* at 169 (Sercombe, J., dissenting), does not account for the plain meaning of compulsion. The statute does not require that the physical force make the sexual contact "likely," *id.* at 172 (Sercombe, J., dissenting), nor does it require a measurement of physical force in mathematical terms. Rather, the statute requires that the victim was subjected to forcible compulsion. Compulsion means that the victim was made to follow a will not her own, and the physical force in a particular case must be sufficient to compel the victim. To assess the effect of physical force on the victim—that is, to determine whether, in a particular case, the victim was compelled by physical force—a jury may consider the circumstances surrounding the offense. An interpretation that treats physical force as an abstract, mechanical concept is inconsistent with the statutory text and shifts the focus away from the question of compulsion to inquiries such as whether the defendant "could just as easily have touched the victim's buttocks" with or without some other physical acts, *id.* at 173 (Sercombe, J., dissenting).

---

victim" is sufficient to make out a case of first-degree sexual abuse, nor do we "equate[ ] any intimidating conduct with 'forcible compulsion,' " *id.* at 170, or focus on whether the victim felt "oppress[ed]" or "intimidated," *id.* at 174, 176. Physical strength or power constitutes forcible compulsion only when it causes the victim to act or submit to being acted on against her will. Accordingly, the examples such as the "shaking of hands" or voluntary kissing suggested by the dissent, *id.* at 173, 175, are unlikely to meet that standard.

■■ Here, considering the totality of the circumstances, a jury could find that defendant subjected the victim to "forcible compulsion," compelling her by physical force to submit to both incidents of sexual contact. The incidents happened within a relatively short period of time, during which the victim was frightened and confused. As to the first incident, in which defendant caused the victim to touch his penis, the jury could find that defendant used physical power to control the victim's movements and ultimately to force her hand down his pants. Initially, he was "on top of her" and was "trying to kiss her on the face," while she "kept telling him no, trying to push him away." Defendant finally "grabbed her hand and forced it down his pants." From that testimony, a jury could find that defendant used physical strength to restrain the victim and then to move her hand into his pants against her will. Accordingly, the first incident constituted first-degree sexual abuse.

As to the second incident, in which defendant touched the victim's buttocks, a jury could find that defendant continued to use physical power to compel the victim. Although the two incidents were separate for purposes of charging defendant with multiple offenses, defendant's conduct in the first incident is part of the totality of the circumstances that the jury could consider in determining whether defendant compelled the victim to submit to the second incident by physical force.[5] Accordingly, we need not—and therefore do not—decide whether defendant's conduct following

---

[5] The dissent contends that considering the totality of the circumstances raises concerns about merger under ORS 161.067(3) (providing that, when a criminal episode involves repeated violations of the same statutory provision against the same victim, each violation "must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent" to be separately punishable). 234 Or App at 175 (Sercombe, J., dissenting).

In this case, defendant has not argued that separate judgments of conviction could not be entered as to each incident of sexual contact. As a factual matter, there was a pause—which began when the victim said no, pulled her hand away, and rolled away from defendant—between the two instances of sexual contact.

As a matter of statutory interpretation, the dissent's interpretation imposes a simultaneity requirement—that is, that the victim must be subjected to an instance of physical force at the same time as each sexual contact—that is unsupported by the statutory text. The statute requires only that the victim be compelled by physical force. A single act may compel a victim to submit to multiple sexual contacts. For example, if a defendant bound a victim and then engaged in multiple nonconsensual sexual contacts, it would seem beyond dispute that the victim had

the first instance of sexual contact would, by itself, be sufficient to support a conviction for first-degree sexual abuse.

Considering the totality of the circumstances, the second incident began with defendant, an adult and a friend of the victim's mother, on top of the victim, a 14-year-old girl, attempting to engage her in sexual contact. When she resisted, he backed off to a degree, but persisted in touching her (rubbing her back) and attempting to persuade her to engage in sexual activity with him. He then returned to more active efforts, forcing her hand down his pants and making her touch his erect penis. Her unwillingness to engage in sexual contact did not deter him.

When the victim pulled her hand away and rolled over onto her stomach, defendant continued his pursuit of sexual contact with her. Although defendant may not have exerted a great deal of physical strength beyond what he had already exerted, the jury could reasonably find that, in context, his conduct—trapping the victim between himself and the wall, forcing her to touch his erect penis, putting his hand on her lower back and rubbing it beneath her shirt, and then reaching under the waistband of her pants—constituted sufficient physical force to qualify as forcible compulsion within the meaning of the statute.

Affirmed.

**BREWER, C. J.,** concurring.

I concur in the majority's analysis and ultimate conclusion that the trial court did not err in denying defendant's motion for a judgment of acquittal on the second count charging him with first-degree sexual abuse.

I write separately to state my view that, but for the forcible compulsion that defendant exerted over the victim in

been subjected to ongoing forcible compulsion in each incident of sexual contact. If a defendant struck a victim and the victim submitted to multiple sexual contacts to avoid being struck again, a jury could conclude that, with a single blow, the defendant compelled the victim to submit to each sexual contact. In such cases, a question may arise as to the sufficiency of the pause between each contact. But our interpretation of ORS 163.427 does not *create* the merger question; that question arises because of the nature of the merger inquiry under ORS 161.067(3).

the first sexual contact, the evidence pertaining to defendant's ensuing conduct did not suffice to permit a reasonable juror to find that defendant exerted forcible compulsion over the victim in the second contact. That ensuing evidence, in context, which included defendant's and the victim's ages, and the nature of their relationship, defendant's location on the bed in relation to the victim and the wall, his rubbing the victim's back, and the eventual placement of his hand under her clothes and on her buttock, did not, by itself, demonstrate the use of forcible compulsion.

However, in the broader context of defendant's interaction with the victim while they were on the bed, including the first instance of sexual abuse, a reasonable juror could find, for the reasons explained by the majority, that defendant forcibly compelled the victim to submit to the second sexual contact.

Although the issue of whether consideration of that broader context of interaction is permissible has been ably argued by the dissent, I believe that the majority has the better of the argument. Accordingly, I concur.

Edmonds, S. J., joins in this concurrence.

**SERCOMBE, J.,** dissenting.

I disagree with the majority's conclusion that the second sexual contact in this case, the touching of the victim's buttocks by defendant, was compelled by physical force so as to satisfy the "forcible compulsion" element of the crime of first-degree sexual abuse under ORS 167.427(1). There was no physical force used on the victim that allowed that sexual contact to occur. Defendant could have just as easily touched the victim's buttocks at the time the crime was committed whether or not he earlier had moved her hand or rubbed her back. Defendant's positioning of his body next to the victim was not the use of physical force against the victim. It is that positioning, and not any physical interaction with the victim, that facilitated the sexual contact. In my view, a case of sexual abuse in the first degree is made out, not by *any* predicate and untoward touching of the victim as the majority implies, but by a distinct application of physical force on the victim that allows the sexual contact to occur. That is what the plain

wording of ORS 163.427(1) requires. Because defendant did not use physical force on the victim with that result, I would reverse the conviction of sexual abuse in the first degree on the second count and remand that part of the judgment for entry of judgment of conviction of sexual abuse in the third degree and for resentencing.

Beyond the majority's misapplication of the plain meaning of ORS 163.427(1), the vague test for "forcible compulsion" employed by the majority, the "totality of the circumstances" test, (1) unnecessarily blurs the distinction between the misdemeanor crime of third-degree sexual abuse and the felony crime of first-degree sexual abuse, a distinction of immense importance given the difference in punishment for the two crimes; (2) equates any intimidating conduct with "forcible compulsion," even though the legislature specifically defines different types of "threats" to be acts of "forcible compulsion"; and (3) allows the prosecution of two crimes based on the same forcible compulsion in ways inconsistent with ORS 161.067, a statute that requires distinct conduct for each crime.

Defendant was arrested and charged with two counts of first-degree sexual abuse. The indictment alleged that the crimes were committed by "forcible compulsion." ORS 163.427(1) provides, in part:

"A person commits the crime of sexual abuse in the first degree when that person:

"(a)   Subjects another person to sexual contact and:

"* * * * *

"(B)   The victim is subjected to forcible compulsion by the actor[.]"

ORS 163.305 provides the relevant definitions for the crime of first-degree sexual abuse. ORS 163.305(6) defines "sexual contact" as

"any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

ORS 163.305(2) defines "forcible compulsion":

    " 'Forcible compulsion' means to compel by:

    "(a)   Physical force; or

    "(b)   A threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will be immediately or in the future be kidnapped."

Thus, the charged crime required defendant to compel sexual contact with the victim by physical force or threat.

        The majority properly concludes that, "[b]ecause ORS 163.427(1) requires both 'sexual contact' and 'forcible compulsion,' the element of 'forcible compulsion' is distinct from the element of 'sexual contact'—that is, 'forcible compulsion' means something more than a physical touch to which the victim does not consent." 234 Or App at 163. Thus, a defendant's action in making or causing the sexual contact is distinct from the application of physical force that constitutes "forcible compulsion."

        Subjecting a victim to "forcible compulsion" is the distinguishing element between the sexual contact that is part of the crime of sexual abuse in the third degree, ORS 163.415, and the sexual contact that is part of the crime of sexual abuse in the first degree, ORS 163.427. ORS 163.415(1) provides:

    "A person commits the crime of sexual abuse in the third degree if the person subjects another person to sexual contact and:

    "(a)   The victim does not consent to the sexual contact; or

    "(b)   The victim is incapable of consent by reason of being under 18 years of age."

As noted, the crime of sexual abuse in the first degree requires subjecting another person to both "sexual contact" and "forcible compulsion." ORS 163.427(1)(a)(B). The difference between both crimes is that sexual contact constitutes third-degree sexual abuse if it is unwanted or without consent, whereas the sexual contact constitutes first-degree sexual abuse if it is caused by forcible compulsion. Therefore,

"forcible compulsion" means something in addition to being without consent.

I agree with the majority, then, that "under the plain meaning of ORS 163.427 and ORS 163.305, physical force constitutes forcible compulsion if it is sufficient to compel the victim to engage in or submit to sexual contact[,]" 234 Or App at 163-64, and that "to compel a person by 'physical force' means to exercise physical strength or power that causes the person to act or to submit to being acted upon against the person's will," 234 Or App at 165. Combining those thoughts, a sexual contact is compelled by physical force when the sexual contact is made possible by the separate use of physical strength or power on the victim. That physical facilitation test is a matter of mechanics—did the use of physical force compel the sexual contact, or did it make it likely that the sexual contact could occur? Examples of physical facilitation in this sense could include holding the victim down in order to allow sexual contact or otherwise physically constraining the victim to the same effect, where the victim could not avoid the sexual contact because of the application of force.

That type of physical force was not used against the victim here to make defendant's touching of her buttocks possible. At the time of that conduct, the victim was lying on her stomach with her face turned away from defendant. Defendant was rubbing the victim's back under her shirt and then slid his hand down the back of her pants "for a few seconds and then [she] said no and he pulled his hand out." Contrary to the prosecutor's assertions, there was no evidence, including the victim's testimony, that defendant was "clutching" the victim or exerting any kind of physical strength directed to the victim in order to make the sexual contact more likely and to overcome potential resistance. The victim did not testify that she was restrained by defendant's actions in rubbing her back or that defendant moved her body or exerted any physical force against her that compelled or caused her to act or to be positioned in any way. In fact, the victim took steps to avoid further sexual contacts after the applications of force against her. The victim turned to lie on her stomach after the first sexual contact and moved away from defendant immediately after the second sexual contact.

The majority recognizes that ORS 163.427(1) requires the use of physical force or threat against the victim that "causes the person to act or to submit to being acted upon against the person's will." 234 Or App at 165. And it identifies three uses of physical force against the victim that preceded the sexual contact in question: the initial physical contacts between defendant and the victim (being "on top of her"); the movement of the victim's hand to touch defendant's penis; and defendant's rubbing of the victim's back. Yet none of those physical interactions made defendant's touching of the victim's buttocks possible or necessarily allowed that sexual contact to occur. After the first two physical contacts, the victim turned over on her stomach. After that, defendant could just as easily have touched the victim's buttocks with or without a backrub.

Instead of a facilitation test for whether physical force compelled the sexual contact, the majority seemingly adopts a *post hoc ergo propter hoc* test—an assumption that any predicate physical interaction between defendant and the victim made the sexual contact likely to occur. It then employs a "totality of the circumstances" test to further qualify those predicate physical acts as "forcible compulsion." Under the majority's logic, if a defendant and a victim shook hands before the defendant groped the victim, the shaking of hands might be forcible compulsion depending on the time of day, the location of the offense, and whether there had been a predicate crime.

Although I agree that the *degree* of physical force necessary to facilitate a sexual contact might depend on the factual context of the crime, I do not concur that predicate acts are categorized differently and *become* causative or compelling because of the relationship between the parties or the time of day or because those acts are crimes. Instead, the inquiry is one of physical facilitation alone—did the application of force physically allow the sexual contact to be possible. By that test, the previous hugging and rubbing of the victim, even the previous sexual abuse, did not have any physical relationship to the touching of her buttocks. That touching was neither made easier nor was the victim made more likely to be touched by the previous physical interactions between

defendant and the victim. *The victim had the same vulnerability to that touching as she had when defendant first entered her bed, prior to the use of any force by defendant.* Therefore, the touching of the victim's buttocks was not compelled by the use of physical force.

The broader "totality of the circumstances" test for "forcible compulsion" advanced by the majority—whether the physical interactions between the victim and defendant and other circumstances made the victim feel oppressed—is inconsistent with the definition of "forcible compulsion" set out in ORS 163.305(2). Put simply, the definition requires physical force sufficient "to compel" the victim to experience the sexual contact, not physical force that, together with a number of other circumstances, makes the victim feel intimidated. In fact, ORS 163.305(2) very explicitly details the particular threatening or intimidating behavior of a defendant that constitutes "forcible compulsion"—an "express or implied" threat "that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will be immediately or in the future be kidnapped." The "totality of the circumstances" test for intimidating conduct employed by the majority to define "forcible compulsion" expands the scope of ORS 163.305(2) beyond its stated meaning.

The "totality of the circumstances" test will be difficult to apply and the consequences of that categorization are significant. As just noted, the existence of "forcible compulsion" is the distinction between the misdemeanor crime of third-degree sexual abuse and the felony crime of first-degree sexual abuse. The maximum punishment for third-degree sexual abuse is a sentence of one year in prison. ORS 161.615(1). If the sexual abuse occurs by means of "forcible compulsion" so that a defendant could be punished for first-degree sexual abuse, the defendant would serve a minimum of 75 months in prison. ORS 137.707(4). A person with extensive criminal history could serve up to 90 months in prison for conviction of first-degree sexual abuse, meaning that the difference between the punishments for the two crimes is at least five years of confinement but could be as much as six and one-half years in prison.

Suppose the need to apply the "totality of the circumstances" test to the following factual scenario—with five to six years in prison at stake in the application of that test: a man and a woman voluntarily kiss at the end of their first social date. Suddenly, the man gropes the woman's breast and she pushes him away. Under my understanding of "forcible compulsion," the prior use of physical force—the kissing of the woman by the man—did not make the groping possible and the man's conduct would be third-degree sexual abuse, the making of an unwanted sexual contact.

Under the majority's "totality of the circumstances" test, the inquiry is much more subtle and would depend on whether the kissing could be oppressive in any way. That, in turn, would depend on the age difference between the parties, the time of day, whether the man had acted boorishly previously, and perhaps a number of other factors that are not apparent. I do not believe that the legislature intended the consequence of potentially 20 years in prison—the difference in punishment between the crimes of third-degree and first-degree sexual assault—to rest on the elusive and subjective classification suggested by the majority.

Finally, there are problems with the application of the "totality of the circumstances" test when—as here—the key circumstance is the prior commission of the same crime. The majority suggests that defendant is accountable for committing the crime of first-degree sexual abuse by the buttocks touching largely because of the forcible compulsion involved in the first sexual abuse charge, defendant's movement of the victim's hand to touch his penis. The common fact for both crimes—that act of forcible compulsion—raises issues of merger under ORS 161.067(3). Under that statute, when there are repeated violations of the same statutory provision in a criminal episode that involves one victim, each violation, in order to be separately punishable, "must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." That provision has been interpreted by the Supreme Court to mean that "one crime must end before another begins." *State v. Barnum*, 333 Or 297, 303, 39 P3d 178 (2002), *overruled on other grounds by*

*State v. White*, 341 Or 624, 147 P3d 313 (2006). Whether a single forcible compulsion for both sexual contacts allows the second violation to begin after the first violation has ended is not clear. The issue, however, suggests that defendant's conduct is better classified as constituting different crimes—first-degree sexual abuse and third-degree sexual abuse—in the absence of separate acts of forcible compulsion.

In sum, I dissent because the majority errs, in my view, in broadening the meaning of "forcible compulsion" beyond physical interactions with the victim that allow the sexual contact to occur. The broader meaning advanced by the majority—whether physical actions together with other circumstances make the victim feel intimidated—is inconsistent with the text of ORS 163.305(2) and is difficult to apply fairly. I believe the case should be remanded for resentencing on the second count, rather than affirmed. The jury's verdict necessarily found the elements of third-degree sexual abuse, ORS 163.415(1)(a) on the second count, a lesser-included offense of first-degree sexual abuse by forcible compulsion. Accordingly, the proper disposition should be to enter a judgment of conviction for the lesser-included offense of third-degree sexual abuse. Or Const, Art VII (Amended), § 3; ORS 136.465; *see, e.g., State v. Conklin*, 214 Or App 80, 162 P3d 364 (2007) (remanding for entry of judgment on lesser-included offense of delivery of a controlled substance where trial court erred in denying judgment of acquittal on charges of delivery of a controlled substance within 1,000 feet of a school).

Armstrong, J., joins in this dissent.