Argued and submitted December 15, 2011, affirmed April 17, petition for review denied September 12, 2013 (354 Or 148)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT LEE MONTGOMERY,
*Defendant-Appellant.*

Lake County Circuit Court
080222CR; A144361

300 P3d 221

Wayne Mackeson argued the cause for appellant. On the brief were Kelly Jaske and Wayne Mackeson, P.C.

Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

Defendant was convicted of driving under the influence of intoxicants (DUII), ORS 813.010(1),[1] and criminal driving while suspended or revoked, ORS 811.182(4). On appeal, defendant contends that, because the state failed to lay a scientific foundation for evidence involving the precise rate of dissipation of alcohol, the trial court erred in denying his motion to exclude that proffered scientific evidence. As explained below, defendant's arguments to the trial court regarding expert testimony were qualitatively different than the argument that he advances on appeal and, accordingly, that argument is not preserved for our review. Defendant also contends that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence that he had actually driven while under the influence of intoxicants, as required by ORS 813.010. We conclude that there was sufficient circumstantial evidence in the record that defendant in fact drove, and, thus, the trial court did not err in denying defendant's motion for judgment of acquittal. Accordingly, we affirm.

One morning, at 5:30 a.m., Trooper Johnson received a call from dispatch reporting that a truck was parked off the side of a highway. Johnson arrived at the truck's location at 6:40 a.m., and Sergeant Williams, coming to assist Johnson, arrived there at the same time. Johnson and Williams observed tire tracks in a sandy gravel area off the highway that extended into a barrow pit and the sagebrush where defendant's truck was parked. Defendant appeared to be asleep in the driver's seat and there was "[no] indication *** that anybody else had been there and left." There was a six-pack of 12-ounce beer cans in the console area, two of which were open and empty. The officers, one on each side of the truck, "pounded on the windows," and, after a minute,

---

[1] ORS 813.010(1) provides, in pertinent part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant[.]"

defendant woke up and got out of the truck to speak with the officers.

Defendant appeared to be disoriented and smelled of alcohol. When asked why he was parked off the highway, defendant explained that he had "got[ten] lost and took a wrong turn as he was going to his ranch in Alfalfa," which was about 60 miles from where defendant was parked. Defendant explained that, earlier that day, he was unable to sleep, so he "decided to take a Xanax" and then drive to his ranch. Defendant initially denied consuming any alcohol, but later admitted to drinking one beer and taking some antidepressant medication. In view of those circumstances, Johnson asked defendant to perform field sobriety tests (FSTs). Defendant agreed, and Johnson administered the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test.

Johnson first administered the HGN test. He observed "a lack of smooth pursuit" in defendant's eyes in following the stimulus. However, Johnson could not determine "whether there was any nystagmus at maximum deviation," because defendant "wasn't following the stimulus properly." Johnson next administered the walk-and-turn test, which defendant chose to perform with his boots off. During the test, he "missed heel-to-toe, he stopped walking, he used his arms for balance, and he didn't walk in a straight line." Defendant took 10 steps instead of the nine steps that he was directed to take, and he turned the wrong way. Defendant failed that test. Finally, Johnson directed defendant to perform the one-leg-stand test. Defendant "used his arms for balance, he put his foot down three times, and he was swaying throughout the test." Accordingly, defendant also failed that test. In addition to those FSTs, Johnson had defendant estimate the passage of 30 seconds to gauge defendant's internal clock. Defendant's estimate was four seconds off, which is acceptable in the drug recognition expert (DRE) context.

Based on all of those circumstances, Johnson concluded that defendant was under the influence of an intoxicant. After advising defendant of his rights, Johnson placed defendant under arrest and searched his truck. Johnson

found a receipt indicating that defendant had purchased a six-pack of beer earlier that morning at 2:19 a.m. at a 7-Eleven located several miles away from defendant's location on the highway. Johnson then transported defendant to the jail, and defendant gave two breath samples reflecting a 0.07 blood alcohol content (BAC), slightly below the legal limit. Those readings were obtained about three hours after dispatch notified the officers that defendant's truck was parked off the highway.

Defendant was subsequently charged with, among other things, driving under the influence of intoxicants and criminal driving while suspended or revoked. Before trial, the state indicated that it intended to offer a DRE officer's testimony regarding the dissipation rate of alcohol. Defense counsel moved to exclude that testimony, arguing,

> "I believe that dissipation rate is actually a scientific method, and I would base my objection on *State v. O'Key*, [321 Or 285, 899 P2d 663 (1995)]; and *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 US 579, 113 S Ct 2786, 125 L Ed 2d 469 (1993)].
>
> "[T]he dissipation rate is a scientific method. It's based on several factors * * * [and] if the [DRE officer] * * * does not have direct training on the metabolic rate, dissipation, the different factors that go into play, it would be unfair to allow him to testify to dissipation rate because he could say anything he wants."

The state responded:

> "Our issue is that we had the criminalist. We had subpoenaed the criminalist for the earlier trial, and based on the representations of the [d]efense we were told we don't need him. So that puts us in a difficult position. Now all we have is the trooper.
>
> "* * * * *
>
> "So now we're at a disadvantage, having relied on the statements that we don't need to call the criminalist. * * * [Defense counsel's] objection is not that it doesn't meet *O'Key*; his objection is this witness is not qualified to give a representation of that."

Although the state initially had no expert available, on the day of trial Jennifer Bray, a forensic scientist, was available to testify on the state's behalf. Defense counsel asked the court to determine, outside the presence of the jury, "what she's qualified in and what she's going to testify to," before testifying before the jury. The parties agreed that it was appropriate to lay an "expert[ ] foundation" to determine "whether or not she's qualified to testify."

Bray first testified about her qualifications as a forensic scientist. She explained that her training involved controlled substances, blood-alcohol analysis, urine toxicology, and breath testing and that, within the blood-alcohol and breath training modules, her training included, among other things, the use of retrograde extrapolation, a method of calculating the range of a driver's BAC at the time alleged, and Widmark's formula, a method of calculating the number of drinks consumed to reach a certain BAC. Bray testified that the average rate of dissipation of alcohol is 0.018 percent per hour. However, she explained that she uses a range of 0.01 to 0.02 percent per hour to account for an individual with a slower elimination rate. Thus, she explained, retrograde extrapolation provides a range or "estimation" of BAC at the time alleged, rather than an exact, specific number. Further, Bray explained that, in order to provide that range, she would need to know the time of the driver's breath test, the time that the driver was stopped, and that the driver was "post-peak," meaning that the driver had "absorbed all of the alcohol" by the time alleged.

Defense counsel moved to exclude Bray's testimony, arguing that it would be misleading to the jury. Defense counsel explained:

> "[I]t's the point that I've been making; it's the *Daubert* and *O'Key*, and specifically relying on *Daubert*, it's in regards to the post-testimony and the sufficiency of that testimony has to be tied to the facts of the case. And here, she's not going to have sufficient facts that are properly tied to this case to be able to render any kind of reliable decision. So our position is we would rely on *O'Key*, we would rely on *Daubert*. We would say that it would be misleading to the jury."

The trial court denied defendant's motion to exclude Bray's testimony, concluding that, assuming that the specific facts of defendant's case were provided to Bray, she should "at least have the opportunity" to testify as to retrograde extrapolation as it applied to defendant.

Bray, testified that, using the method of retrograde extrapolation, she estimated that at 5:30 a.m., defendant's BAC was between 0.10 and 0.13 percent. Bray also testified that, based on the Widmark formula, if a male of defendant's height and weight drank two 12-ounce cans of beer, he would reach a theoretical maximum BAC of 0.035 percent. Within three hours, Bray testified, using a conservative range of 0.01 to 0.02 percent dissipation rate, his BAC would be "very close to zero."

On appeal, defendant first contends that the trial court erred in admitting the retrograde extrapolation evidence. More precisely, defendant now argues that, because the theory of retrograde extrapolation is based on principles of science, and the state failed to meet the enhanced foundational requirements for "scientific" evidence announced in *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *O'Key*, 321 Or 285, the trial court should have excluded that evidence. The Supreme Court in *O'Key* held, among other things, that, "in the absence of a clear case, a case for judicial notice, or a case of *prima facie* legislative recognition," the proponent of "scientific" evidence must demonstrate that the evidence is scientifically valid. 321 Or at 293. Defendant contends that, because the proffered scientific evidence here is not the subject of a clear case, a case for judicial notice, or a case of *prima facie* legislative recognition, the state was required to satisfy the enhanced foundational requirements for scientific evidence, including analysis of the seven factors identified by the Supreme Court in *Brown*: (1) the technique's general acceptance in the field; (2) the expert's qualifications and stature; (3) the use which has been made of the technique; (4) the potential rate of error; (5) the existence of specialized literature; (6) the novelty of the invention; and (7) the extent to which the technique relies on the subjective interpretation of the expert.

That argument is not preserved.[2] As explained above, defendant's trial objection as to the retrograde extrapolation testimony related to two issues: first, that an expert on retrograde extrapolation, and not a DRE officer, should testify regarding the method and, second, that despite the state procuring an expert, that expert's testimony would be misleading to the jury because she would "not * * * have sufficient facts that are properly tied to this case to be able to render any kind of reliable decision." Thus, defendant's arguments at trial related to Bray's qualifications and whether she had sufficient facts to make reliable calculations. By contrast, on appeal, defendant's challenges are directed at the method of retrograde extrapolation itself, arguing that the state failed to present sufficient evidence that retrograde extrapolation is based on scientifically valid principles. Defendant argues that the state "satisfied not even one of the seven criteria set forth in *Brown*"; for example, Bray "offered no indication of the breadth of the methodology's acceptance in the field," she "made no claim of having researched, written, or published on the subject of retrograde extrapolation," and the state "offered no specialized literature in support of the proffered scientific methodology." Those arguments are qualitatively different than the contentions that defendant advanced below. Accordingly, that matter is not preserved for our review as required by ORAP 5.45(1), and we do not consider it. *See State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) (the court generally will not consider an unpreserved argument on appeal).

Defendant also contends that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence that he had actually *driven* while under the influence of intoxicants, as required by ORS 813.010. In reviewing the denial of a motion for judgment of acquittal, we view the facts in the light most favorable to the state to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Whitley*, 295 Or 455, 460, 666 P2d 1340 (1983).

---

[2] The state does not contend that defendant failed to preserve that argument. Nevertheless, we are "enjoined as a prudential matter, to determine independently whether [defendant] adequately raised and preserved his present contention before the trial court." *Wilson v. Walluski Western Ltd.*, 226 Or App 155, 162, 203 P3d 284 (2009).

When analyzing the sufficiency of evidence, "we make no distinction between direct and circumstantial evidence as to the degree of proof required." *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Our review of the record indicates that the trial court did not err in denying defendant's motion for judgment of acquittal.

Again, ORS 813.010(1) defines the crime of DUII and provides, in pertinent part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant[.]"

Here, there was sufficient circumstantial evidence for a rational trier of fact to infer that defendant drove while under the influence of an intoxicant or with a BAC of 0.08 percent or more. The state presented evidence that the officers found defendant by himself, sleeping in the driver's seat of his truck off the side of the highway, that defendant was several miles away from his home, that defendant stated that he "was driving to his ranch in Alfalfa," that a few hours earlier defendant had purchased a 6-pack of beer near his home, and that the console of his truck contained the 6-pack with two empty cans of beer. That constitutes legally sufficient evidence from which the jury could have found beyond a reasonable doubt that defendant drove while under the influence of an intoxicant. *See State v. Stothoff*, 99 Or App 197, 199-200, 781 P2d 412 (1989), *rev den*, 309 Or 334 (1990), (evidence that officers found the defendant intoxicated, several miles from his home, with his keys in the ignition, and with two empty bottles of beer was sufficient to sustain denial of motion for judgment acquittal on the issue of driving).

Affirmed.