Argued and submitted December 17, 2010, decision of Court of Appeals affirmed in part and reversed in part; judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings April 14, 2011

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# COREY DENNIS MARSHALL,
*Petitioner on Review.*

(CC CR060570; CA A135603; SC S058549)

253 P3d 1017

Peter Gartlan, Chief Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs was Mary Shannon Storey, Senior Deputy Public Defender.

Mary H. Williams, Solicitor General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief was John R. Kroger, Attorney General.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

---

** Gillette, J., retired December 31, 2010, and did not participate in the decision of this case. Landau, J., did not participate in the consideration or decision of this case.

BALMER, J.

**BALMER, J.**

In this criminal case, defendant challenges the denial of his motion for judgments of acquittal on two charges of first-degree sexual abuse, ORS 163.427. He argues, with respect to both charges, that the state's evidence was insufficient to support a finding that he subjected the victim to "forcible compulsion" within the meaning of that statute.[1] We conclude that the evidence of forcible compulsion was sufficient to prove one of the charges but insufficient to prove the other. Because the Court of Appeals held that there was sufficient evidence to prove *both* charges, we reverse that court's decision in part.

Although we discuss ORS 163.427 in detail below, a brief explanation at this point of the crime of sexual abuse will provide helpful context for the issues that arise in this case. The lowest level of the crime of sexual abuse is third-degree sexual abuse, ORS 163.415. A person commits that crime if:

"(a)   The person subjects another person to sexual contact and:

"(A)   The victim does not consent to the sexual contact; or

"(B)   The victim is incapable of consent by reason of being under 18 years of age * * *."

"Sexual contact," in turn, is defined in ORS 163.305(6) as:

"[A]ny touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

---

[1] ORS 163.427 provides, in relevant part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"* * * * *

"(B) The victim is subjected to *forcible compulsion* by the actor.

"* * * * *

"(2) Sexual abuse in the first degree is a Class B felony."

(Emphasis added.)

Thus, to prove third-degree sexual abuse, the state must show that the defendant (1) touched an intimate part of the victim for the purpose of gratifying the sexual desire of the defendant or the victim *or* caused the victim to touch an intimate part of the defendant for such a purpose, *and* (2) that the victim did not consent to the contact—or was deemed incapable of giving consent because the victim was under 18.[2] Third-degree sexual abuse is a Class A misdemeanor.

The crime is elevated to first-degree sexual abuse if the defendant subjects the victim to "sexual contact" as defined above, and one of three additional elements is present: the victim is less than 14 years of age; the victim is subjected to "forcible compulsion" by the defendant; or the victim is incapable of consent. ORS 163.427(1)(a).[3] "Forcible compulsion" is a statutorily defined term:

" 'Forcible compulsion' means to compel by:

"(a)   Physical force; or

"(b)   A threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped."

ORS 163.305(2). First-degree sexual abuse is a Class B felony, ORS 163.427(2), with a mandatory sentence of 75 months in prison. ORS 137.700(2)(a)(P).[4]

---

[2] A person also commits the crime of third-degree sexual abuse if the person, for the purpose of sexual gratification, "intentionally propels any dangerous substance at a victim without the consent of the victim." ORS 163.415(1)(b). That form of third-degree sexual abuse is unrelated to our interpretive task or to the conduct in this case, and we do not discuss it further.

[3] A person also commits first-degree sexual abuse if the person, for purposes of sexual gratification, intentionally causes a person under the age of 18 to touch or contact "the mouth, anus or sex organs of an animal." ORS 163.427(1)(b). Again, because that provision provides no assistance in interpreting the provisions of the statute at issue in this case, we do not discuss it.

[4] A person commits the crime of second-degree sexual abuse when the person is a sports "coach" of a victim under the age of 18 and engages in sexual contact with the victim or when one person subjects another person, without consent, to sexual intercourse, deviate sexual intercourse, or sexual penetration. ORS 163.425. That statute plays no role in this case.

Here, as noted, defendant was charged with two counts of sexual abuse in the first-degree, and the central issue on review is whether there was evidence on one or both of those counts from which a reasonable juror could have found the element of "forcible compulsion" that elevates third-degree sexual abuse to first-degree sexual abuse.

## FACTUAL BACKGROUND AND PROCEEDINGS BELOW

Returning to the facts of this case, we present the evidence in the light most favorable to the state. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998) (in reviewing denial of a motion for a judgment of acquittal, court views the evidence in the light most favorable to the state).[5] The relevant events occurred in 2006, when the victim was 14 years old. Defendant, who was 27 at the time, was a friend of the victim's mother and had been living with the victim's family for a short time. Early in the morning on the day in question, the victim woke up and discovered defendant in her bed, partially on top of her, hugging her and trying to kiss her. The victim told him "no" and tried to push him away. Defendant began to rub the victim's back, with his hand outside her t-shirt. The victim was "a little bit" scared and wondered what defendant was doing. Defendant continued to rub the victim's back for 10 or 15 minutes and then took the victim's hand and held it on the bed between the victim and himself. Defendant asked the victim about her "last boyfriend" and about whether she wanted him to help her "get over her fears." The victim responded "no." Defendant then "grabbed" the victim's hand and "forced" it down the front of his pants, placing it on his erect penis. After a few seconds, the victim "jerked" her hand away, turned onto her stomach, and faced away from defendant.

---

[5] This summary of the facts is drawn from the testimony of several witnesses. The victim testified about defendant's actions in her room that morning, as did defendant. Three other witnesses testified as to what the victim had told them about defendant's actions: a friend of the victim's, the friend's mother, and the local police chief. The testimony of those three other witnesses was admitted without objection, presumably under the hearsay exception for complaints of abuse, OEC 803(18a)(b) (statement concerning act of abuse not excluded as hearsay if declarant testifies at proceeding).

Defendant began rubbing the victim's back again, this time with his hand underneath her shirt. Ultimately, he slipped his hand down the back of her sweatpants and put it on her buttocks. The victim said "no" and scooted away from defendant. Defendant pulled his hand away. Afterward, defendant told the victim "five or six times" that she "couldn't tell anybody" and that, "if [she] did, he would have to hurt somebody because it would hurt him." After 10 minutes, defendant got up from the bed, said something about there being too much light in the room, hung a blanket over one of the windows, and left the room.[6]

The victim reported the incident to the police. Based on that report, defendant was charged with two counts of first-degree sexual abuse, ORS 163.427, on the theory that defendant had subjected the victim to two separate instances of sexual contact "by means of forcible compulsion"—the first, by causing the victim to touch his penis and the second, by touching the victim's buttocks.[7] At the close of the state's evidence, defendant moved for a judgment of acquittal on those

---

[6] In recounting the facts that a reasonable juror could have found, including the permissible inferences that could be drawn from the evidence, we deviate from the Court of Appeals' statement of the facts on one point. The majority opinion stated as fact that defendant "trapp[ed] the victim between himself and the wall," and used that fact to support its conclusion that a jury could find that the second contact occurred with sufficient force to qualify as forcible compulsion. *State v. Marshall*, 234 Or App 159, 168, 227 P3d 786 (2010). In a footnote, the court explained that there was "conflicting evidence" as to which side of the bed defendant was on and that the jury was entitled to credit the evidence indicating that he was on the side away from the wall. *Id.* at 161 n 2. Our review of the record discloses no real conflict and no basis for the statement that defendant "trapped" the victim between himself and the wall. The victim herself drew a diagram, admitted as an exhibit at trial, clearly showing defendant against the wall and herself away from the wall, and all her testimony was consistent with that placement. The only testimony even tangentially suggesting that the victim, rather than the defendant, was on the side of the bed against the wall, was a comment by the victim's friend, who said that the victim told her that she had "scooted over towards the wall" when defendant put his hand down the back of the victim's sweatpants. On cross-examination, the friend stated that the victim told her only that she had "scooted over." The friend did not testify that the victim had told her that she was on the wall side of the bed or that defendant had "trapped" her against the wall; indeed, no witness used the word "trapped." In light of the consistent testimony of the victim and others that *defendant* was against the wall, we do not see any plausible inference from her friend's testimony that would create a genuine conflict in the evidence.

[7] Defendant also was charged with, and convicted of, coercion, ORS 163.275. Defendant does not challenge that conviction on review to this court.

two charges, arguing that, on each charge, the state had failed to present sufficient evidence to create a jury issue on an essential element of the crime of first-degree sexual abuse as charged here—that defendant had subjected the victim to "forcible compulsion." Defendant asserted that there was no evidence that defendant had used what the legislature intended by "forcible compulsion"—specifically, physical force or threats of physical injury—to cause the victim to engage in, or submit to, either of the sexual contacts. The trial court denied the motion, explaining that:

> "There was testimony by the alleged victim that she didn't want to do these things. She didn't want to have them done to her, and that she would not have done them, and would not have allowed them had she had the choice. I think that under the current statutory definition there's no require-ment that there be any sort of a struggle or even a resis-tance. * * * I do think that there is enough evidence here to go to the jury."

Both charges went to the jury and the jury returned guilty verdicts on both. On appeal, defendant assigned error to the denial of his motion for judgments of acquittal.

A divided Court of Appeals, sitting en banc, affirmed. *State v. Marshall*, 234 Or App 159, 227 P3d 786 (2010). The majority concluded that, for purposes of ORS 163.427(1)(a), "forcible compulsion" by means of physical force is any exercise of physical strength or power by the actor that, when taken in combination with the surrounding circumstances, causes the victim to act or to submit to being acted upon against the person's will. As to the first charge in this case, the majority concluded that, considering the total-ity of the circumstances, a reasonable juror could find that defendant used physical strength to restrain the victim and then to move her hand to his erect penis against her will. In particular, the majority determined that a jury could have found that defendant initially was on top of the victim, that he kept trying to kiss her face, that the victim kept telling him no and trying to push him away, and that defendant finally grabbed her hand and forced it into his pants and into contact with his erect penis. As to the second charge, the majority concluded that defendant's conduct leading up to and including the act of putting defendant's hand on his

penis was "part of the totality of the circumstances that the jury could consider." *Id.* at 167. The majority recounted all of those actions and then stated:

> "Although defendant may not have exerted a great deal of physical strength beyond what he had already exerted, the jury could reasonably find that, in context, his conduct—trapping the victim between himself and the wall, forcing her to touch his erect penis, putting his hand on her lower back and rubbing it beneath her shirt, and then reaching under the waistband of her pants—constituted sufficient physical force to qualify as forcible compulsion within the meaning of the statute."

*Id.* at 168.[8]

## THE PARTIES' CONTENTIONS

Before this court, defendant argues that the Court of Appeals majority erroneously interpreted the first-degree sexual abuse statute and, consequently, erred in finding sufficient evidence of forcible compulsion to support the jury's verdict on both charges. Specifically, defendant contends that, under ORS 163.427(1)(a), a victim is subjected to "forcible compulsion" only when the actor uses violent or dominating physical force that separately results in the specific sexual contact that is charged. Defendant contends that there is no evidence in the record that the victim was subjected to any violent, dominating force by defendant, much less evidence showing that such force resulted in either of the sexual contacts at issue.

The state responds that, although "forcible compulsion" by means of physical force clearly requires a use of physical force that causes the victim to act or submit to being

---

[8] As noted, the Court of Appeals decision was not unanimous. A concurring opinion accepted the majority's result, but sought to clarify the author's view that a finding of forcible compulsion would not be possible on the second charge if the action that was at the heart of that charge—defendant's placing of his hand on the victim's buttocks—had not been preceded by the actions that constituted the first charge. *Marshall*, 234 Or App at 168-69 (Brewer, C. J., concurring). A dissenting opinion stated that forcible compulsion exists only if the sexual contact is made possible by the defendant's *separate* use of physical strength or power on the victim—and would have concluded that the evidence in the record would not support a finding that defendant used that type of force against the victim during the second contact. *Id.* at 169-76 (Sercombe, J., dissenting).

acted upon against his or her will, the statute does not require any particular degree of physical force or that the use of physical force result in or facilitate the sexual contact. Rather, it requires only that the sexual contact be *accompanied by* some degree of forcible compulsion. It follows, the state argues, that first-degree sexual abuse can be proved by showing an act of physical compulsion that was part of the circumstances surrounding the particular sexual contact at issue, without regard to whether the act of compulsion had any causal relationship to the sexual contact. By the same token, the state argues, a single act of physical force that accompanies multiple acts of sexual contact can transform each such act into a separate instance of first-degree sexual abuse. In this case, the state concludes, the victim was subjected to forcible compulsion by means of physical force when defendant embraced the victim, rubbed her back and, finally grabbed her hand and put it down his pants, holding it there until she jerked her hand away. Those acts of forcible compulsion, according to the state, transformed the two sexual contacts that accompanied them—defendant's moving of the victim's hand to touch defendant's penis and defendant's subsequent placing of his hand on the victim's buttocks—into separate acts of first-degree sexual abuse.

Although the parties present their differences as an undifferentiated whole, they actually resolve into two separate issues: (1) whether the "forcible compulsion" element of first-degree sexual abuse must in some sense cause or result in the sexual contact; and (2) whether the term "forcible compulsion" contemplates a particular level of physical force, such as the violent or dominating physical force that defendant argues is required. We address the issues in that order.

## ANALYSIS

When this court interprets a statutory term or provision, it follows the analytic framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993), as modified by *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)—that is, we consider the text and context and, if appropriate, the legislative history. We begin, then, with the text of ORS 163.427. It provides, in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to *sexual contact* and:

"* * * * *

"(B) The victim is subjected to *forcible compulsion* by the actor[.]"

(Emphasis added.)

As noted earlier, the term "sexual contact" is defined in ORS 163.305(6) to mean any touching of an intimate part of the victim or of the actor, for purposes of the sexual gratification of either, and the parties do not disagree about the meaning of that term. Thus, our focus is on the intended meaning of the phrase "subjected to *forcible compulsion*" in ORS 163.427(1)(a), when the "forcible compulsion" is accomplished by "physical force."

The legal dispute between the parties here pertains to the relationship between the two elements of the crime set out at subsection (1)(a) and paragraph (1)(a)(B)—subjecting the victim to "sexual contact" and subjecting the victim to "forcible compulsion." Defendant contends that the second element is satisfied only by acts that "result in" the "sexual contact" that is the first element of the crime. The state insists, to the contrary, that the two elements are "distinct," and that nothing in the text requires or implies any causal connection between the physical force used in the "forcible compulsion" and the touching that constitutes the "sexual contact." As the state reads the statute, the "forcible compulsion" required by paragraph (1)(a)(B) need only "accompany" the sexual contact required by subsection (1)(a).

We conclude that defendant's interpretation is the correct one. Although we acknowledge that nothing in the text of ORS 163.427 explicitly connects the elements set out at subsection (1)(a) and paragraph (1)(a)(B), the relationship is implicit in the text of the statute. As noted, ORS 163.427(1)(a)(B) defines the prohibited conduct in terms of "the victim [being] subjected to forcible compulsion by the actor," where "forcible compulsion" means "to compel by

* * * physical force." The question then is: "compel[led] by * * * physical force" to do *what*?⁹ Given the wording of the statute, the only possible answer to the question of what is "compelled" is: to submit to or engage in the physical contact that is the other element of the crime of first-degree sexual abuse, *i.e.,* the "sexual contact" to which the actor has "subjected" the other person.

That interpretation also finds support in the distinction between the nonconsensual "sexual contact" that is punishable as third-degree sexual abuse and nonconsensual sexual contact that is the result of "physical force," and, therefore, is punishable as first-degree sexual abuse. The elevation of the nonconsensual sexual contact from a misdemeanor to a felony makes sense only if there is a causal connection between the additional element of "forcible compulsion" and the submission to or engagement in the sexual contact (or, stated differently, if the submission or engagement was "compelled by" or resulted from "physical force"). Thus, if a defendant compelled a victim by physical force to sit in a chair, but that conduct was unrelated to any (nonconsensual) sexual contact to which the defendant subjected the victim, the defendant would be guilty of third, rather than first, degree sexual abuse.

Finally, both subsection (1)(a) and paragraph (1)(a)(B) use the "subjected to" phraseology—the actor "*subjects* [the victim] to sexual contact" and the victim is "*subjected to* forcible compulsion by the actor." That repeated sentence structure suggests that the second phrase—"subjected to forcible compulsion" should be interpreted in light of the first phrase—"subjects * * * to sexual contact," rather than being viewed simply as a separate element that must be proved to make out the crime of first-degree sexual abuse. That connection is a further indication that the legislature intended a causal relationship between the actor's use of physical force and the victim's submission to, or engagement in, the sexual contact.

---

⁹ Put differently, "compel" is a transitive verb, and the use of that word therefore ordinarily requires an object—that which is "compelled."

For those reasons, we reject the state's contrary argument that nothing in the text or context of the first-degree sexual abuse statute requires or implies any causal connection between the "forcible compulsion" and the sexual contact elements of the crime defined therein. It is not sufficient for the state to prove that a defendant subjected a victim to nonconsensual sexual contact and also "compel[led]" the victim by "physical force" to submit to or engage in some act unrelated to the sexual contact. We conclude that paragraph (1)(a)(B) of ORS 163.427 refers to "forcible compulsion" that results in the sexual contact that is the other necessary element of the crime.

A necessary corollary of that conclusion is that, contrary to the state's argument, a single act of forcible compulsion that accompanies multiple acts of sexual contact does not necessarily transform each of those sexual contacts into separate instances of first-degree sexual abuse. Instead, for each of the sexual contacts that the state charges, the state must rely on an act of "forcible compulsion" that bears some causal relationship to the sexual contact: It must, in some sense, result in that *particular* sexual contact. In so holding, of course, we do not foreclose a trier of fact from finding, based on all the evidence, that a single act of compulsion in fact resulted in multiple instances of sexual contact.

We turn, now, to the other point of disagreement about the meaning of ORS 163.427(1)(a)—whether, as defendant contends, the "forcible compulsion" to which a victim is subjected must be so violent or aggravated that the defendant physically *dominates* the victim and accomplishes the sexual contact because of that domination. We already have set out the relevant portion of ORS 163.427(1)(a) and the statutory definition of "forcible compulsion" that applies in this case, which is "to compel by * * * physical force." ORS 163.305(2).

The two words that are most relevant to a textual analysis of that phrase are the verb "compel" and the noun "force."[10] The verb "compel" means:

---

[10] The term "physical" also is important but it is unnecessary to resort to the dictionary for the meaning of that term: "Physical" force is simply bodily or material (as opposed to mental or moral) force.

"**1:** FORCE, DRIVE, IMPEL : as **a :** to force by physical necessity or evidential fact * * * **2 a :** to force or cause irresistibly : call upon, require, or command without possibility of withholding or denying * * * **3 a :** to domineer over so as to force compliance or submission : demand consideration or attention ‹ nobody will ~ you; you are perfectly free * * * › **b :** to obtain (a response) by force, violence, or coercion ‹ ~ assent at the point of a gun ›."

*Webster's Third New Int'l Dictionary* 463 (unabridged ed 2002). "Force" is defined as:

"**1 a :** strength or energy esp. of an exceptional degree : active power : VIGOR * * * **c :** power to affect in physical relations or conditions ‹ the ~ of the blow was somewhat spent when it reached him› ‹the rising ~ of the wind› * * * **3 a :** power, violence, compulsion, or constraint exerted upon or against a person or thing * * * **b :** strength or power of any degree that is exercised without justification or contrary to law upon a person or thing **c :** violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death."

*Id.* at 887.

The word "compel" conveys a range of meanings, centered around achieving compliance or submission by some level of force. The meanings of the word "force" range from "vigor" and "constraint" to "violence" and "strength or energy * * * of an exceptional degree." Contrary to the parties' arguments in favor of one or the other dictionary definitions, there is little in the words of the statute that would make one of the specific definitions more relevant than any other. Although most of the definitions of "force" suggest a significant, rather than a minimal, level of strength or energy, we cannot say that "to compel [something] by * * * physical force" denotes any particular quality or degree of physical force. The word does not, for example, clearly refer only to violence or complete physical domination of the other person. Rather, the force to which the statute refers is an amount or kind of force that is sufficient to "compel" that which is identified in the statute, *viz.*, the sexual contact.

Defendant insists that there is contextual support for his view that the legislature intended to refer only to violent, wholly dominating physical force. He points to ORS

163.415, which, as discussed above, 350 Or at 210, defines third-degree sexual abuse as sexual contact to which the victim does not consent. Defendant contends that certain conclusions about the meaning of the "forcible compulsion" element of ORS 163.427 can be drawn from a comparison of the two statutes. Defendant first observes that some minimal physical force—the mechanical movement of one's hand, for example, and the placing of that hand on another person's intimate parts—is inherent in "subjecting another person to sexual contact," as that phrase is used in both statutes. That is so, in defendant's view, because "sexual contact," as it is defined for purposes of both statutes means:

> "any *touching* of the sexual or other intimate parts of another person or *causing such person to touch* the sexual or other intimate parts of the actor."

ORS 163.305(6) (emphasis added). Defendant then makes the following observation: If the actor's use of the minimum force that is inherent in nonconsensual sexual contact (touching of the victim or causing the victim to touch the actor) is within the scope of third-degree sexual abuse, ORS 163.415(1), then it is clear that some more elevated degree of physical force is contemplated by the "forcible compulsion" element of the substantially more serious crime of first-degree sexual abuse, ORS 163.427(1)(a). Defendant contends that that elevated degree of physical force is force that is suggestive of violence and that dominates the victim.

We agree that a comparison of third-degree and first-degree sexual abuse leads to the conclusion that, when the "forcible compulsion" element of the latter statute is proved by evidence of physical force, the level of force that is involved must be greater than or qualitatively different from the simple movement and contact that is inherent in the action of touching an intimate part of another. But we do not accept defendant's further leap that "forcible compulsion" therefore *must* involve a violent, dominating level of force. We have no reason to believe that the legislature viewed physical force in this context as a binary system, offering only a choice between the minimum physical movement and contact inherent in any nonconsensual sexual touching and violent or dominating physical coercion.

Our conclusion that "forcible compulsion" must involve more than the force inherent in sexual contact is supported by changes that the legislature made to the statutory definition of "forcible compulsion" in 1999. Before 1999, "forcible compulsion" was defined for purposes of ORS 163.427 and other sexual offenses as follows:

" 'Forcible compulsion' means physical force *that overcomes earnest resistance*; or a threat, express or implied, that places a person in fear of immediate death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped."

ORS 163.305(2) (1997) (emphasis added). In 1999, the legislature considered and ultimately enacted Senate Bill 944 (1999), which removed the "overcomes earnest resistance" wording and added the phrase "to compel by," ultimately resulting in the present definition:

" 'Forcible compulsion' means *to compel by*:

"(a)   Physical force; or

"(b)   A threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped."

ORS 163.305(2) (emphasis added).

The state contends that removal of the "overcomes earnest resistance" wording "represented a sea change in how forcible compulsion was viewed" in the context of the sexual abuse, sodomy, and rape statutes. The state notes that the 1999 amendment eliminated not only the requirement that the victim physically resist, but also the requirement that the state prove that the defendant used a level of force that *overcame* the victim's earnest resistance. The state argues that, by removing the reference to "overcoming" the victim's resistance, the legislature signaled that the prosecution no longer would be required to prove that a defendant used overwhelming force or, for that matter, any particular degree of physical force.

Defendant denies that the legislature intended to alter or lower the level of physical force that constitutes "forcible compulsion" when it removed the "earnest resistance" component from the definition of that term. Defendant acknowledges that, in the pre-1999 definition, the "physical force" and "earnest resistance" components were interrelated, insofar as the latter component had functioned, at least in part, as an evidentiary tool for gauging the level of physical force used by the actor. Defendant argues, however, that, by eliminating the "earnest resistance" component, the legislature

"did not change *what* the state had to prove with respect to the actor's use of physical force; instead, the amendment affected *how* the state was to prove it—by focusing on the actor's conduct, not whether the victim earnestly resisted."

(Emphasis in original.) Thus, defendant argues, although the victim's physical resistance became irrelevant after 1999, the state still was required to prove that the defendant exerted physical force of the same quality and degree that had always been required.

That aspect of defendant's position is consistent with the legislative history of the 1999 amendment. The amendment was promoted by a group of rape victim advocates and district attorneys, who argued that the requirement of proving earnest resistance was unfair to, and actually could endanger, victims of sexual assault. The amendment that initially was introduced differed slightly from the one that ultimately was enacted: It simply deleted the phrase "that overcomes earnest resistance" from the definition of "forcible compulsion" as it then existed. Marion County District Attorney Dale Penn, who testified in favor of the bill before the Senate Committee on Judiciary, explained that the bill removed "a requirement on sexual assault victims that should not be there."[11] Tape Recording, Senate Committee on Judiciary, SB 944, Apr 26, 1999, Tape 149, Side A (testimony

---

[11] He explained to the committee that "[t]he focus should be on, 'Was there forcible compulsion? Was there physical force that was not involved?' not, 'Did the victim resist?'" Tape Recording, Senate Committee on Judiciary, SB 944, Apr 26, 1999, Tape 149, Side A (testimony of Dale Penn).

of Dale Penn). Penn stated that the amendment was not directed at other elements of the affected sex crimes—that it

> "does not change the requirement that the state must prove the elements of the crime. *This bill does not change the requirement that the state must prove beyond a reasonable doubt that forcible compulsion was used in a crime. It simply, in the first part of this, removes this requirement of earnest resistance.*"

*Id.* (emphasis added).

At the same hearing, a representative of the Oregon Criminal Defense Lawyers Association expressed concern that the removal of the "overcomes the victim's earnest resistance" wording, without other changes, could have an unintended effect. She argued, in particular, that, insofar as every sexual act involves some degree of "physical force," the proposed amendment, as worded, would sweep in consensual sexual acts. *Id.* Tape 148, Side A (testimony of Ingrid Swenson). The committee chair and the proponents of the bill recognized that potential problem and discussed alternatives to address it. *See id.* Tape 149, Side B (comments of Chair Neil Bryant; testimony of Dale Penn). In its next session on the bill, the committee approved an additional amendment that added the "to compel by" wording that now appears in the statute. Tape Recording, Senate Committee on Judiciary, SB 944, May 5, 1999, Tape 165, Side A (vote on motion to adopt Senate amendments).

The textual changes that the 1999 legislature made to ORS 163.305(2) support the view that the amendments were directed towards removing the requirement that the victim resist, and were not intended to alter the requirements of the statute with respect to the actor's conduct. They also indicate legislative concern that the reference to "physical force"—without the reference to force sufficient to "overcome earnest resistance"—might unintentionally broaden the meaning of "forcible compulsion," and that the phrase "to compel by" was added to the definition to prevent that result. In short, the legislative history of the 1999 amendment provides at least some support for defendant's position that the legislature intended only to remove the unfair and potentially dangerous "earnest resistance" requirement, and that

it did not intend to alter the level of physical force that would be required to convict an actor of first-degree sexual abuse, rape, or sodomy.

But that conclusion still does not lead as far as defendant wishes to go. It does not establish that the legislature understood, in 1999 or before, that only physical force that is sufficient to dominate the victim constitutes "forcible compulsion" for purposes of the statutes defining the various first-degree sexual offenses. The 1999 amendment does show that the legislature did not intend to permit *every* kind or degree of force to qualify as "forcible compulsion." Even as the legislature removed the "overcomes earnest resistance" wording that previously had helped define the level of force that was required, it added other words that described the acts of "physical force" that would qualify—by specifying that forcible compulsion means *"to compel by * * * physical force."* Implicit in the addition of that wording is the requirement that the physical force must be of a degree or quality that is sufficient to *compel* the act at issue—sufficient, that is, to cause a victim to submit to, or to engage in, the sexual contact against his or her will. Thus, rather than expanding the meaning of "forcible compulsion" to include *any* degree of physical force (as the state asserts), the 1999 legislature clearly intended to describe and quantify the physical force that can constitute forcible compulsion.

Based on the text and context of ORS 163.427(1)(a), we agree that "forcible compulsion" by means of physical force must involve physical force that is greater in degree or different in kind than the minimal force that is inherent in "subjecting" a victim to "sexual contact." The physical force must be sufficient to "compel" the victim, against the victim's will, to submit to or engage in the sexual contact, but it need not rise to the level of violence. The question ordinarily will be one of degree.

Moreover, the degree or kind of physical force that will be sufficient may depend on the type of sexual contact that the state alleges. As noted, ORS 163.305(6) encompasses both sexual contact that occurs when a person "touch[es] * * * the sexual or other intimate parts of [another]" and sexual contact that occurs when a person "caus[es]" another "to

touch the sexual or other intimate parts of the actor." When a defendant subjects a victim to the first type of sexual contact—defendant touching victim—the defendant's own physical act may range from no, or minimal, "physical force," such as occurs in a momentary contact or brushing against the victim, to a violent groping or injurious sexual assault that clearly constitutes forcible compulsion. A defendant's conduct can only constitute first-degree sexual abuse when the defendant uses physical force that is greater in degree or different in kind from the simple movement and contact inherent in the act of touching.

In contrast, when the second type of sexual contact is involved—defendant physically causing victim to touch defendant—the defendant's act causes an act by the victim. The defendant's act—*causing* the victim to touch the defendant—will, in many instances, be different in degree and kind from the victim's act—touching the defendant. In those circumstances, there likely is a narrower range of conduct that would constitute physical force sufficient to have "caused" the victim to touch the defendant, for purposes of the "sexual contact" definition, and yet not be sufficient to have "compelled" the victim to engage in the sexual contact for purposes of the "forcible compulsion" definition. Thus, when a defendant engages in the second type of sexual contact described in ORS 163.305(6), the defendant's act is likely to meet the definition of forcible compulsion, as long as the force that the defendant uses is sufficient to compel the victim to engage in the act of touching against his or her will.

Finally, the force that is sufficient to "compel" one person to submit to or engage in a sexual contact against his or her will may be different from that which is sufficient to compel another person to do so. In determining whether the physical force used by the defendant against the particular victim was sufficient to compel that victim to submit to or engage in the sexual contact, the trier of fact may consider circumstances known to the defendant that relate to whether the victim was in fact "compelled," such as the victim's age; the differences in age, size, and strength between the victim and the defendant; the relationship between the victim and the defendant; and similar facts.

Before returning to the facts of this case, we briefly summarize our conclusions about what the state must prove when it alleges that a defendant violated ORS 163.427(1)(a) by means of forcible compulsion. We have determined, first, that there is a causal connection between the "sexual contact" and "forcible compulsion" elements of ORS 163.427(1)(a), and, therefore, to prove that a particular sexual contact was first-degree sexual abuse, the state must prove not only that the defendant subjected the victim to an act of forcible compulsion, but also that that act resulted in the sexual contact that is the focus of the charge, in the sense that it compelled the victim to submit to or engage in the contact. We also have determined that, when the state elects to prove the "forcible compulsion" element of a charge of first-degree sexual abuse by evidence of physical force, it must show that the physical force that the defendant used was greater in degree or different in kind from the simple movement and contact that is inherent in the act of touching the intimate part of another and that the force was sufficient to compel the victim to submit to or engage in the sexual contact, against the victim's will.

## APPLICATION

Applying that holding to the two charges in the present case, we conclude that only one of the charges should have survived defendant's motion for judgments of acquittal. As to the first charge—that defendant "did unlawfully and knowingly subject the victim to sexual contact by causing [the victim] to touch a sexual or intimate part of the defendant by means of forcible compulsion"—the evidence in the record is sufficient to create a jury question. The state presented evidence that defendant had "forced" the victim's hand down inside defendant's pants and against his erect penis, and that the victim had "pulled" or "jerked" her hand away. Although the sexual touching was the victim's hand touching the defendant's penis, the "physical force" was defendant's use of his own hands to cause the victim to engage in that sexual contact. We have little trouble concluding that a reasonable jury could find that defendant "caus[ed] the victim to touch his intimate parts" and that he did so by using some degree of physical force, different in degree or

kind from the simple movement and contact inherent in the act of the victim touching defendant's penis.

The question that remains as to the first charge is whether the evidence could support a finding that the physical force used was sufficient to compel a person in the victim's circumstances to engage in the sexual contact. Here, the victim was a 14-year-old girl and the defendant was a 27-year-old man, a friend of the victim's mother who had been living in the victim's home for a short time. The crime took place in the victim's room, where she had been sleeping in her bed when she awoke to find defendant lying partially on top of her. The physical setting, the victim's age, the age difference between the victim and defendant, and the fact that the victim's mother had welcomed defendant into her home, all contributed to a situation in which the jury reasonably could conclude that the physical force that defendant exerted was sufficient to cause a person of that age and in those circumstances to submit to the physical contact against her will. We therefore conclude that the evidence was sufficient to create a jury question with respect to the charge that defendant used "forcible compulsion" to cause the victim to touch defendant's sexual or intimate parts.

We reach the opposite conclusion with respect to the charge that defendant sexually abused the victim in the first degree by "touching a sexual or intimate part of [the victim]." In contrast to the physical force that defendant used to cause the victim's hand to come into contact with his penis, nothing in the record suggests that the second touching itself involved any greater or different force than was inherent in that particular sexual contact—defendant's touching of the victim's buttocks. That touch lasted "a few seconds," and when the victim said "no," defendant immediately removed his hand and did not touch her again. There was no evidence that the touching involved any fondling, rubbing, or other stimulation, or that defendant exerted any physical force other than that involved in briefly touching the victim's buttocks.

Although the state points to *other* prior acts involving physical force—including defendant's prior act of forcing the victim's hand to his penis—as providing the requisite evidence, there was no evidence that that "physical force"

*caused* the victim to submit to defendant touching her buttocks or "compelled" her to submit to that touching. That force did not restrain, trap, or physically coerce the victim in order to cause her to submit to defendant's later touching. To be sure, the victim did not consent to the touching, and the jury could—and did—find that defendant subjected the victim to unlawful sexual contact. However, to prove first-degree sexual abuse, the state also had to prove that defendant used "physical force" sufficient to "compel" the victim to submit to sexual contact against her will. In light of the state's failure to prove any act of physical force by defendant that could have compelled the victim to submit to the second sexual contact charged, we conclude that the evidence of forcible compulsion as to that latter charge was insufficient to create a question for the jury. The Court of Appeals' contrary conclusion was error.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.