Submitted February 24, conviction for first-degree rape reversed; remanded for resentencing; otherwise affirmed December 7, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACK JAMES MAGEL,
*Defendant-Appellant.*

Marion County Circuit Court
07C43354; A141155

268 P3d 666

Peter Gartlan, Chief Defender, and Eric Johansen, Senior Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

ORTEGA, P. J.

---

* Brewer, C. J., *vice* Rosenblum, S. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for first-degree rape, ORS 163.375, second-degree rape, ORS 163.365, and first-degree sexual abuse, ORS 163.427. We reject without discussion defendant's second assignment of error, challenging his Measure 11 sentences on constitutional grounds,[1] and write only to address his contention that the trial court erred in denying his motion for judgment of acquittal on the charge of first-degree rape on grounds that the evidence presented did not support a finding that he had subjected the victim to "forcible compulsion." We conclude that the trial court erred and, accordingly, we reverse defendant's conviction for first-degree rape but otherwise affirm.

The facts are not in dispute. When the victim was approximately five years old, she and her older sister came to live with defendant and his wife while their mother was in prison. Sometime later, when the victim was in the fourth grade and between nine and 10 years old, defendant and his wife separated and defendant moved to the coast with the victim for several months. While they were living together in a trailer, defendant had sexual intercourse with the victim on several occasions. She told defendant that she "didn't like it and * * * didn't want to do it," and he responded by telling her that "everything would be okay." The victim testified that she resisted defendant by holding her legs together and telling him "no," but "he would just open them up." He told her "not to tell because if [she] did something would happen to [her] sister" and "he would hurt [her] sister."

Eventually, at the beginning of her sixth-grade year, the victim began living with her mother, who had been released from prison. The following summer, when she was approximately 12 or 13 years old, she attended her mother's office picnic at Champoeg Park. Defendant, who was divorced at the time and living in Brooks, attended the picnic, and he and the victim went fishing near the park. Defendant then asked the victim if she would like to pick cherries at a farm

---

[1] As defendant acknowledges, the Oregon Supreme Court rejected his sentencing arguments in *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den*, 522 US 994 (1997), which he contends was wrongly decided.

near the park, and, after obtaining her mother's consent, the victim agreed. After they picked cherries, defendant told the victim that he needed to get something that he had forgotten in his mobile home, so the two went to Brooks.

At defendant's invitation, the victim accompanied him inside the mobile home. Defendant went into his bedroom and then called for the victim to come in. When she did, she found him naked. She told him that she "didn't want to do it," and he responded by telling her that "everything was going to be okay." Defendant told the victim that she "could get on the bed" and she did so. Defendant then had sexual intercourse with her. She did not "put up a fight" because she believed that if she tried to do so, "he would just fight right back."

Afterwards, the two went out and picked tomatoes and then went back to the picnic. The victim did not immediately disclose what had happened because her sister still lived with defendant's ex-wife, defendant "could still talk to [the victim,] and he still knew where [the victim] lived" and she believed that "he could still get to [her]." About a year later, the victim told her mother about the various incidents of abuse.

Defendant was charged with one count of first-degree rape, one count of second-degree rape, and one count of first-degree sexual abuse. The incident on the day of the picnic is the subject of the first-degree rape charge. With respect to that charge, the indictment alleged that defendant "did unlawfully and knowingly, by forcible compulsion, engage in sexual intercourse with [the victim]." At the close of the state's evidence, defendant moved for a judgment of acquittal on the first-degree rape charge, contending that the state had failed to prove forcible compulsion. The court concluded that, in light of defendant's conduct during the prior uncharged instances in which he had had sexual intercourse with the victim, had forced her legs apart, and had told her that, if she told anyone, he would hurt her sister, there was evidence of "implied threats regarding [the victim's] safety and the safety of her sister." Accordingly, the trial court denied the motion. Ultimately, the jury returned guilty verdicts and defendant was convicted on all counts.

We review the trial court's denial of a motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the state proved all of the essential elements of the crime beyond a reasonable doubt. *State v. Lockamy*, 227 Or App 108, 113, 204 P3d 822 (2009). Here, the crime at issue is first-degree rape. ORS 163.375(1)(a) provides:

"A person who has sexual intercourse with another person commits the crime of rape in the first degree if:

"(a)   The victim was subjected to forcible compulsion by the person[.]"

In defendant's view, the evidence here

"was insufficient to establish that defendant compelled the victim to have sexual intercourse with him by the use of physical force, or that he compelled the victim to have sexual intercourse with him by the use of a threat, express or implied, that placed the victim in fear of immediate or future death or physical injury to self or another person[.]"

The state responds that, although the "record does not make clear whether defendant subjected the victim to physical force or threats in the incident at issue," a reasonable jury could find that his prior *"explicit* forcible compulsion was *implicit* in the rape at issue here." (Emphasis in original.) In other words, the state asserts that there is evidence of an implicit threat. Thus, the issue here, as framed by the parties, is whether, when he had sexual intercourse with the victim on the day of the picnic, defendant subjected the victim to "forcible compulsion."

The term "forcible compulsion" is defined in ORS 163.305(2):

" 'Forcible compulsion' means to compel by:

"(a)   Physical force; or

"(b)   A threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped."

As noted above, the state does not contend that defendant employed physical force to compel the sexual contact at issue here. *Cf. State v. Marshall*, 350 Or 208, 253 P3d 1017 (2011) (exploring the physical force aspect of forcible compulsion).[2] Rather, we must determine whether defendant engaged in conduct that a reasonable juror could conclude constituted an implied threat.

The plain meaning of the term "threat" is as follows:

"**1:** an indication of something impending usu. undesirable or unpleasant * * * **a:** an expression of an intent to inflict evil, injury, or damage on another usu. as retribution or punishment for something done or left undone * * * **b:** an expression of an intention to inflict loss or harm on another by illegal means and esp. by means involving coercion or duress of the person threatened * * *."

*Webster's Third New Int'l Dictionary* 2382 (unabridged ed 2002); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 612, 859 P2d 1143 (1993) (in interpreting a statute, the court generally will give words their plain, ordinary meaning). Thus, for an act to constitute forcible compulsion by threat, there must be some kind of communication by the defendant to the victim of intent to inflict harm. That communication may be "express, that is, "directly and distinctly stated or expressed rather than implied or left to inference : not dubious or ambiguous : DEFINITE, CLEAR, EXPLICIT, UNMISTAKABLE." *Webster's* at 803 (defining "express"). It may also be communicated or conveyed not by a direct, "forthright statement but by allusion or reference likely to lead to [a] natural inference." *Id.* at 1135 (defining "imply").

---

[2] The issue of forcible compulsion in *Marshall* arose in the context of a first-degree sexual abuse charge. The portion of the first-degree sexual abuse statute at issue in *Marshall* is substantially similar to the rape statute at issue here. Specifically,

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"* * * * *

"(B) The victim is subjected to forcible compulsion by the actor[.]"

ORS 163.427; *see Marshall*, 350 Or at 217. In addition, the term "forcible compulsion" is the same in both this case and *Marshall* and, in both cases, is subject to the same statutory definition.

Thus, here, the question we must resolve is whether the evidence presented demonstrated any expression by defendant of an intent to inflict harm on the victim or another such that that expression could have compelled the victim to engage in the sexual contact at issue. *See, e.g., Marshall*, 350 Or at 225 (force must "be sufficient to 'compel' the victim, against the victim's will, to submit to or engage in the sexual contact").

Although the physical force aspect of forcible compulsion is not at issue in this case, the court's discussion in *Marshall* is instructive. There, the issue was whether the defendant, who was 27, engaged in forcible compulsion by physical force toward the victim, who was 14, under the following facts:

"Early in the morning on the day in question, the victim woke up and discovered defendant in her bed, partially on top of her, hugging her and trying to kiss her. The victim told him 'no' and tried to push him away. Defendant began to rub the victim's back, with his hand outside her t-shirt. The victim was 'a little bit' scared and wondered what defendant was doing. Defendant continued to rub the victim's back for 10 to 15 minutes and then took the victim's hand and held it on the bed between the victim and himself. Defendant asked the victim about her 'last boyfriend' and about whether she wanted him to help her 'get over her fears.' The victim responded 'no.' Defendant then 'grabbed' the victim's hand and 'forced' it down the front of his pants, placing it on his erect penis. After a few seconds, the victim 'jerked' her hand away, turned onto her stomach, and faced away from defendant.

"Defendant began rubbing the victim's back again, this time with his hand underneath her shirt. Ultimately, he slipped his hand down the back of her sweatpants and put it on her buttocks. The victim said 'no' and scooted away from defendant. Defendant pulled his hand away. Afterward, defendant told the victim 'five or six times' that she 'couldn't tell anybody' and that 'if [she] did, he would have to hurt somebody because it would hurt him.' After 10 minutes, defendant got up from the bed, said something about there being too much light in the room, hung a blanket over one of the windows, and left the room."

350 Or at 212-13 (brackets in original; footnote omitted). In light of those circumstances, the court considered two issues:

whether the forcible compulsion element of the sexual offense "must in some sense cause or result in sexual contact" and "whether the term 'forcible compulsion' contemplates a particular level of physical force[.]" *Id.* at 216.

With respect to the first question, the court determined that "a single act of forcible compulsion that accompanies multiple acts of sexual contact does not necessarily transform each of those sexual contacts into separate instances of first-degree sexual abuse." *Id.* at 219. Instead, each charge of first-degree sexual abuse must be based on an "act of 'forcible compulsion' that bears some causal relationship to the sexual contact[.]" *Id.*

With regard to the second issue, the court concluded that " 'forcible compulsion' by means of physical force must involve physical force that is greater in degree or different in kind than the minimal force that is inherent in 'subjecting' a victim to 'sexual contact.' " *Id.* at 225. Furthermore, "[t]he physical force must be sufficient to 'compel' the victim, against the victim's will, to submit to or engage in the sexual contact, but it need not rise to the level of violence. The question will ordinarily be one of degree." *Id.* The court noted that

> "the force that is sufficient to 'compel' one person to submit to or engage in a sexual contact against his or her will may be different from that which is sufficient to compel another person to do so. In determining whether the physical force used by the defendant against the particular victim was sufficient to compel that victim to submit to or engage in the sexual contact, the trier of fact may consider circumstances known to the defendant that relate to whether the victim was in fact 'compelled,' such as the victim's age; the difference in age, size, and strength between the victim and the defendant; the relationship between the victim and the defendant; and similar facts."

*Id.* at 226.

Applying those rules to the facts of that case, the court concluded that the defendant had engaged in physical force when he forced the victim's hand down his pants and

that the victim's and defendant's respective ages, the physical setting, and the fact that the victim's mother had welcomed the defendant into her home "all contributed to a situation in which the jury could reasonably conclude that the physical force that defendant exerted was sufficient to cause a person of that age and in those circumstances to submit to physical contact against her will." *Id.* at 228. Thus, the court concluded that there was a jury question presented "with respect to the charge that defendant used 'forcible compulsion' to cause the victim to touch" his penis. *Id.* However, with respect to the charge relating to the defendant's touching of the victim's buttocks, the court reached the opposite conclusion, explaining that "nothing in the record suggest[ed] that the second touching itself involved any greater or different force than was inherent in that particular sexual contact[.]" *Id.* Although the state pointed "to *other* prior acts involving physical force—including defendant's prior act of forcing the victim's hand to his penis," the court concluded that those prior acts were insufficient to "prove any act of physical force by defendant that could have compelled the victim to submit to the second sexual contact charged." *Id.* at 228-29 (emphasis in original).

Here, as noted, the state was required to present some evidence of acts of forcible compulsion by defendant which a jury could conclude compelled the victim to submit to the sexual contact. The state has pointed to no conduct by defendant on the date of the incident that would constitute either physical force or a threat. Indeed, the state acknowledges that the record does not reflect any such conduct by defendant during the charged event. Although the trial court found that there was an implied threat, there was no evidence that, at any time near the day of the picnic, defendant communicated to the victim, either directly or indirectly, that he would harm her or another person if she did not submit to the sexual conduct. The record does not reflect that defendant referred in any way to the prior sexual contact or to the victim's sister or communicated in any way that harm might result or that, at any time near the time of the incident in question, defendant had physically harmed the victim (other than by engaging in the sexual conduct that is at issue). Rather, the conduct that the state asserts supports a finding

of forcible compulsion by threat occurred several years before the day of the picnic. Specifically, when the victim was nine or 10 years old, the defendant used physical force to compel her to engage in sexual contact when he forced her legs apart and had sexual intercourse with her over her objection. Furthermore, during that earlier time period, defendant made express threats to harm the victim's sister (although those threats appear aimed at causing the victim not to disclose the abuse rather than at compelling her to permit the sexual contact in the first place).

As with physical force, a threat that is sufficient to compel a person to submit to sexual contact will vary depending on the surrounding circumstances, including the parties' respective ages and the history and relationship between them. *See Marshall*, 350 Or at 226. Thus, we can envision circumstances where a person's past conduct could communicate an implied threat of harm at the time of the charged incident sufficient to constitute forcible compulsion. *Cf. State v. Odoms*, 117 Or App 1, 844 P2d 17 (1992), *rev den*, 316 Or 529 (1993) (describing circumstances that presented some evidence of an implied threat). Here, however, such a threat was not present. Although it is not disputed that the victim actually believed that defendant would physically force her to engage in sexual contact, as in *Marshall*, nothing in the record suggests that defendant engaged in any force on the day of the picnic other than the force inherent in the sexual conduct at issue. Furthermore, there was a significant lapse in time since the prior incidents; the victim no longer lived with defendant nor was he in a parental position in her life; defendant had divorced his wife and moved from the home where the victim's sister lived; and defendant's conduct and statements to the victim on the day of the picnic itself were not threatening in nature. In the end, the state presented no evidence of an implied threat by defendant at the time of the sexual conduct at issue and, therefore, no evidence of forcible compulsion. The evidence supports the view that the prior incidents, though remote in time, influenced the victim's expectations of defendant and, indeed, compelled her to submit. However, in keeping with the Supreme Court's construction of ORS 163.305(2), that influence does not qualify as an

implied threat in the legal sense and, therefore, does not constitute forcible compulsion. Accordingly, the circumstances here did not create a jury question with respect to first-degree rape, and the trial court should have granted defendant's motion for judgment of acquittal with respect to that charge.

Conviction for first-degree rape reversed; remanded for resentencing; otherwise affirmed.