***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted June 6, affirmed July 6, 2023

In the Matter of C. A. F.,
a Youth.
STATE OF OREGON,
*Respondent,*

*v.*

C. A. F.,
*Appellant.*

Clackamas County Circuit Court
20JU03969; A176952

Jeffrey S. Jones, Judge.

Ginger Fitch argued the cause for appellant. Also on the briefs was Youth, Rights & Justice Attorneys at Law.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Youth appeals a juvenile court judgment finding him within the court's jurisdiction for acts that, if committed by an adult, would constitute first-degree rape, ORS 163.375, and second-degree sexual abuse, ORS 163.425. He raises three assignments of error, arguing that (1) the juvenile court erred by admitting hearsay statements from the victims, J and S, under OEC 803(18a)(b); (2) admitting those hearsay statements violated his due process rights; and (3) the evidence was legally insufficient to support the first-degree rape adjudication regarding J. For the reasons that follow, we affirm.

*First Assignment of Error.* As noted, youth first argues that the juvenile court erred by admitting hearsay statements from the victims, J and S, under OEC 803(18a)(b). Youth argues that, although the hearsay statements at issue were made by J and S when they were children (*i.e.*, under 18 years of age), and although both J and S testified at trial and were subject to cross-examination, J and S had both reached adulthood by the time they testified, thereby rendering those statements inadmissible under OEC 803(18a)(b). Put simply, youth's view is that hearsay statements are admissible under OEC 803(18a)(b) only if the declarant is under 18 years of age *at the time the declarant testifies at trial*.

Reviewing for legal error, *State v. Juarez-Hernandez*, 316 Or App 741, 744, 503 P3d 487, *rev den*, 369 Or 856 (2022), we conclude that the trial court did not err in admitting the challenged hearsay statements under OEC 803(18a)(b). In *Juarez-Hernandez*, we rejected the same argument youth now raises, *see* 316 Or App at 744-54 (rejecting defendant's argument that "hearsay statements of a 'child declarant' are admissible under OEC 803(18a) only if the declarant is still a child at the time of trial"), and youth has not met the "rigorous standard" of affirmatively demonstrating that *Juarez-Hernandez* is "plainly wrong," *see State v. Civil*, 283 Or App 395, 418, 388 P3d 1185 (2017) (articulating standard for overruling precedent). Consequently, we reject that assignment of error.

*Second Assignment of Error.* Youth next argues that admitting the hearsay statements of J and S under OEC 803(18a)(b) violates his state and federal due process rights. We understand youth to contend that admitting the challenged hearsay statements constitutes impermissible "bolstering" or "corroboration" of J's and S's in-court testimony.

Having reviewed the record, we conclude that youth has not "demonstrate[d] that the question or issue presented by the assignment of error timely and properly was raised and preserved in the lower court," ORAP 5.45(4)(a); we are not persuaded that the portions of the record youth cites in support of preservation show that the juvenile court had "the chance to consider and rule on [the] contention," nor that there was an opportunity for "the opposing party to respond to [that] contention," *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Accordingly, we decline to address that assignment of error. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court.").

*Third Assignment of Error.* Lastly, youth argues that the evidence was legally insufficient to support the adjudication of first-degree rape as to J. More specifically, youth contends that the state failed to adduce evidence sufficient to prove beyond a reasonable doubt that youth knowingly subjected J to "forcible compulsion" in order to have sexual intercourse.

"[T]o review youth's challenge to the sufficiency of the evidence, our task [is] to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the alleged act beyond a reasonable doubt." *State v. R. W. G.*, 288 Or App 238, 239-40, 404 P3d 1131 (2017) (internal quotation marks omitted). The state responds, however, that we should not consider youth's challenge, because youth did not preserve it below and does not request plain-error review. Assuming, without deciding, that youth's challenge is preserved, we conclude that the evidence in the record is legally sufficient to support the adjudication of first-degree rape as to J.

As relevant here, "forcible compulsion" means "to compel by * * * [p]hysical force." ORS 163.305(1). To prove that youth "used forcible compulsion by way of physical force, the state must prove: (1) that a causal connection exists between the physical force at issue and the alleged contact; and (2) that the physical force used by [youth] 'was greater in degree or different in kind from the simple movement and contact that is inherent in the act of touching' and that that force was 'sufficient to compel the victim to submit or engage' in the alleged contact 'against the victim's will.'" *State v. Kawamoto*, 273 Or App 241, 252, 359 P3d 305 (2015) (quoting *State v. Marshall*, 350 Or 208, 227, 253 P3d 1017 (2011)).

Here, J testified, among other things, that when the sexual intercourse occurred, youth had "slammed [J] down on the floor pretty much while being on top of [her]"; that youth "had [J] pinned to the ground," with J's "arms pinned down to the ground and [youth] was on top of [her]"; that J was "trying to move [her] legs or something to try to like get out from under [youth], but [youth] had [J's] arms pinned down to the ground and was on top of [J], and [J] wasn't able to move."

Youth counters that, because he "paused his action before asking permission to have intercourse and received J's 'okay' before continuing, the evidence is insufficient to infer that [youth] knew J's permission was coerced by physical force. To be sure, J did testify that youth said "I'm going to do it," to which J responded, "Okay," at which point youth "put it [(his penis)] in [J's vagina]." However, J provided the following testimony as to "[w]hat made [her] say, 'Okay,'": "I didn't think there was any other way out at that point. I thought that I have no choice. [Youth] was stronger than me. He was persistent, and I was trapped in a room with nobody to help me." Thus, viewed in context, a reasonable factfinder could find—as did the juvenile court—that when J said "Okay," that "does not mean that she consented," but instead meant that J was "submitting to the force that [wa]s being used against [her]."

We therefore conclude that, viewed in the light most favorable to the state, a rational trier of fact could have

found the essential elements of first-degree rape beyond a reasonable doubt.

Affirmed.