Argued and submitted April 30, 2019; reversed and remanded for resentencing, otherwise affirmed April 29, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD KARL NYGAARD,
*Defendant-Appellant.*

Lincoln County Circuit Court
16CR40011; A164455

466 P3d 692

Defendant was convicted of several crimes, including one count of first-degree unlawful sexual penetration (Count 7) and one count of attempted first-degree rape (Count 8). On appeal, defendant assigns error both to his convictions on those counts and to the 200-month sentence the court imposed on Count 7. With respect to the convictions, defendant contends that the state did not prove that he used "forcible compulsion" in sexually assaulting the victim. With respect to sentencing, defendant contends that the trial court erred by imposing a sentence longer than either the mandatory minimum sentence under ORS 137.700 or the maximum sentence permissible under the sentencing guidelines. He also contends that the court erred by sentencing defendant without first ordering a presentence report. The state concedes that, given the circumstances of this case, the trial court erred in imposing the 200-month sentence on Count 7 and in failing to order a presentence report. *Held*: The trial court did not err in determining that defendant used forcible compulsion in his assault on the victim. However, the Court of Appeals accepted the state's concessions regarding the trial court's error in imposing a sentence longer than either the mandatory minimum sentence under ORS 137.700 or the maximum guideline sentence and in failing to order a presentence report.

Reversed and remanded for resentencing; otherwise affirmed.

Thomas O. Branford, Judge.

Erik Blumenthal, Deputy Public Defender, argued the cause for the appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Reversed and remanded for resentencing; otherwise affirmed.

## HADLOCK, J. pro tempore

Defendant was charged with multiple crimes including first-degree unlawful sexual penetration (Count 7) and attempted first-degree rape (Count 8). As set out in more detail below, the state alleged that defendant committed those crimes "by forcible compulsion." Following a bench trial, the trial court found defendant guilty of Counts 7 and 8, as well as several other counts not at issue here. The court imposed a sentence that included 200 months of incarceration on Count 7—twice the mandatory minimum term under ORS 137.700 (Measure 11)—and 38 months of incarceration on Count 8, to be served concurrently with the prison term imposed on Count 7.[1] On appeal, defendant challenges his convictions on Counts 7 and 8, arguing that the state did not prove that he used "forcible compulsion" in sexually assaulting the victim. We reject that argument for the reasons set out below. Defendant also contends that the trial court erred by imposing the 200-month sentence on Count 7 and by sentencing him without having first ordered a presentence report. The state concedes that, given the circumstances of this case, the trial court erred in those two ways. As discussed below, we accept the state's concessions. Accordingly, we affirm defendant's convictions, but we reverse and remand for resentencing.

For purposes of this appeal, the material facts are undisputed. The victim in this case suffered from a medical condition that left her unable to stand or walk, and she used a motorized wheelchair. She had no ability to move her legs or to "try to keep [her] legs open or closed." She had a caregiver who, among other things, transferred her from bed to wheelchair in the morning and back into bed in the evening. The victim had some use of her hands; for example, she could feed herself, but she could not cook meals. However, the victim had only limited use of her arms and, while in bed, she was unable to move from side to side. She wore an adult diaper.

One night, defendant entered the victim's apartment and went into her bedroom. The victim repeatedly ordered

---

[1] The legislature amended ORS 137.700 in 2019. Or Laws 2019, ch 635, § 10. All citations to ORS 137.700 in this opinion are to the 2015 version of the statute.

defendant to leave, but he did not. Defendant took off his pants, got onto the victim's bed, and tried to put his penis in her mouth. Although defendant's penis touched the victim's face, she was able to turn her head to the side and keep her mouth closed, so defendant's penis, which was not erect, did not go into her mouth. Defendant then pulled down the victim's diaper, grabbed her breast, and inserted a finger into her vagina. To accomplish that, defendant had to move the victim's legs. Defendant also tried to insert his penis into the victim's vagina, but he failed because he was not erect. Because of her medical condition, the victim was not able to fight off defendant or even attempt to do so. Defendant left after a few hours.

The next morning, the victim told her caregiver that she had been raped, and the caregiver called police, who arranged for the victim to be taken to a hospital. The nurse who performed the examination testified that the victim's legs were very stiff and could not move in a way to allow a speculum examination without it being "too uncomfortable"; accordingly, the nurse examined the victim only externally.

At trial, after the state presented evidence supporting the facts outlined above, defendant moved for a judgment of acquittal on certain charges, including Counts 7 and 8, arguing that there was no evidence that he had used "any physical force *** beyond the touching that occurred." Because of that absence of evidence, defendant argued, a factfinder could not find that he had committed the crimes by means of "forcible compulsion," as the state had alleged. In response, the state argued that "forcible compulsion" had occurred because defendant "had to use force in order to commit the act because of her condition." The trial court denied the motion as to Counts 7 and 8 on the ground that defendant "moved [the victim's] legs," which, "in the context of this case, *** is physical force." The court determined that the physical force occurred when defendant "had to move her legs and pull her diaper down"; it further explained that "the only way [the victim] could be put in a position where she could be subjected to digital penetration or penile penetration would be someone moved her legs so that it could be done," which "constitutes the physical force in the context of all the facts of this case." Sitting as factfinder, the court

then found defendant guilty of multiple charges, including Counts 7 and 8.

At sentencing, the state asked the court "to sentence [defendant] as a Measure 11" on Count 7 and to apply a sentence-enhancement factor to double the mandatory-minimum sentence on that count. Defendant urged the court to "not find substantial and compelling reasons to go beyond" a Measure 11 sentence, but he did not argue that the court lacked authority to upwardly depart. The trial court noted that the mandatory minimum sentence under ORS 137.700 would be "100 months" and, based on the victim's vulnerability, it doubled that sentence to 200 months. On Count 8, the court doubled the presumptive 19-month sentencing-guidelines term, also based on its vulnerable-victim finding.

On appeal, defendant first challenges his convictions on Counts 7 and 8, in which the state alleged that he used forcible compulsion when he penetrated the victim digitally (Count 7) and when he attempted to rape her (Count 8). Defendant contends that the record does not include evidence supporting a finding that he used "forcible compulsion" to accomplish that sexual contact. Defendant's argument stems from the statutory definition of "forcible compulsion," which, as relevant here, is defined to mean "to compel by *** [p]hysical force." ORS 163.305(1)(a).[2] Defendant also relies on *State v. Marshall*, 350 Or 208, 221, 253 P3d 1017 (2011), in which the Supreme Court held that a person uses "physical force" to compel a sexual act only when the person uses force "greater than or qualitatively different from the simple movement and contact that is inherent in the action of touching an intimate part of another." Defendant contends that he did not use any physical force beyond that inherent in the achieved and attempted sexual contact. In particular, he argues that his act of moving the victim's legs so he could contact her vagina "was inherent to defendant's conduct" because of her "very unusual and unfortunate physical condition." Put differently, defendant

---

[2] Although the legislature amended ORS 163.305 in 2017, the definition of "forcible compulsion" was not changed. Or Laws 2017, ch 318, § 2; Or Laws 2017, ch 634, § 17. Accordingly, this opinion cites the current version of that statute.

argues that, because somebody would have had to move the victim's legs to engage in vaginal sex even if she consented to that contact, the movement was inherent to the sexual act and defendant's conduct in moving the victim's legs cannot be considered forcible compulsion. In response, the state contends that, "even assuming that the force defendant used was a necessary predicate to the sexual conduct, it does not follow that the force was *inherent* in that conduct." (Emphasis in state's brief.)

We agree with the state. The Supreme Court explained in *Marshall* that, to constitute "forcible compulsion," the physical force used by the defendant "must be greater than or qualitatively different from the simple movement and contact that is inherent in the action of touching an intimate part of another." 350 Or at 221. The force also "must be sufficient to 'compel' the victim, against the victim's will, to submit to or engage in the sexual contact." *Id.* at 225. That is, there must be "a causal connection between the 'sexual contact' and 'forcible compulsion' elements." *Id.* at 227. However, the force need not be violent or dominating. *Id.* at 221. Significantly, "the force that is sufficient to 'compel' one person to submit to or engage in a sexual contact against his or her will may be different from that which is sufficient to compel another person to do so." *Id.* at 226.

In *Marshall*, the Supreme Court applied those principles in determining that the evidence was sufficient to support a finding that one act by the defendant involved forcible compulsion, although it was not sufficient to support such a finding with respect to another act. The *Marshall* defendant, an adult friend of the victim's mother, crawled into bed with the victim, a 14-year-old girl. Among other things, the defendant "'grabbed' the victim's hand and 'forced' it down the front of his pants, placing it on his erect penis." *Id.* at 212. Later, after the victim jerked her hand away, the defendant rubbed the victim's back and "slipped his hand down the back of her sweatpants and put it on her buttocks" before the victim scooted away. *Id.* at 213.

The Supreme Court held that the evidence was sufficient to support a finding that the defendant caused the

victim to touch his penis "by using some degree of physi-
cal force, different in degree or kind from the simple move-
ment and contact inherent in the act of the victim touching
defendant's penis." *Id*. at 227-28. The court also held that
a factfinder could determine that that force compelled the
victim to engage in the sexual contact, given her age, the
physical setting, and relationship between her mother and
the defendant. *Id*. at 228. That is, "the jury reasonably could
conclude that the physical force that defendant exerted was
sufficient to cause a person of that age and in those circum-
stances to submit to the physical contact against her will."
*Id*. By contrast, the record did not support a finding that the
defendant had used physical compulsion when he touched
the victim's buttocks, as no evidence suggested "that the
second touching itself involved any greater or different force
than was inherent in that particular sexual contact," which
lasted only a few seconds. *Id*.

    Thus, the Supreme Court emphasized in *Marshall*
that sexual touching *itself* generally will not amount to forc-
ible compulsion, unless that touching encompasses force,
such as "a violent groping or injurious sexual assault." *Id*. at
226. Instead, the physical force must be different from "the
simple movement and contact inherent" in the sexual con-
tact, and there must be a causal relationship between that
force and the contact that results. *Id*. at 227-28.

    Here, defendant engaged in criminal sexual con-
tact when he penetrated the victim's vagina and when he
attempted to rape her. Defendant's act of forcibly moving the
victim's legs to make that sexual contact possible might have
been a necessary predicate to the contact, given the circum-
stances, but it was not inherent "in the action of touching an
intimate part of another"—here, the victim's vagina—which
is the *only* kind of force that *Marshall* holds does not count
for the purpose of determining whether a defendant used
"forcible compulsion" when committing a sex crime. 350 Or
at 221.

    In arguing otherwise, defendant seeks to broaden
the meaning of "inherent" to encompass any act that is nec-
essary to allow the defendant to engage in sexual conduct
toward the victim. That argument cannot be squared with

*Marshall*'s holding that the defendant in that case used forcible compulsion when he forced the victim's hand down his pants and placed it on his penis. In some sense, that physical force was a necessary predicate to the contact itself, which would not have occurred if the defendant had not manipulated the victim's hand. Nonetheless, the Supreme Court concluded that a jury could find that that action differed from "the simple movement and contact inherent in the act of the victim touching defendant's penis," and, because that action resulted in the victim touching the defendant's penis, it constituted "forcible compulsion." *Id*. at 227-28.

The circumstances are not meaningfully different here. Just as the defendant in *Marshall* used forcible compulsion when he manipulated the hand of the victim in that case to make it contact his penis, defendant here used forcible compulsion when he manipulated the victim's legs so he could contact her vagina. Nor are we persuaded that the evidence was insufficient to establish "forcible compulsion" simply because the victim could not have moved her legs without defendant's assistance, had she consented to the sexual contact. The point is that she did not consent, either to the sexual contact or to defendant moving her legs. To the contrary, defendant subjected the victim *both* to unwanted sexual contact *and* to the forcible movement of her legs— which the testimony indicates would have been very uncomfortable for her and, more importantly, against her will—to make that contact possible. The fact that a *different* victim might not have felt "compelled" by the moving of her legs is immaterial. *See Marshall*, 350 Or at 226 ("[T]he force that is sufficient to 'compel' one person to submit to or engage in a sexual contact against his or her will may be different from that which is sufficient to compel another person to do so."). On this record, the evidence was sufficient for the issue of "forcible compulsion" to go to the factfinder. Accordingly, the trial court did not err when it denied defendant's motion for judgment of acquittal on Counts 7 and 8.

Defendant's remaining assignments of error relate to sentencing. In his second assignment of error, defendant argues that the trial court erred "when it found the 'victim's particular vulnerability' [to be an] aggravating sentence-enhancement factor," which the court used as a basis to

double the prison terms on Counts 7 and 8. Defendant contends that the evidence does not support a finding that he was aware of the victim's particular vulnerability. We reject that argument without published discussion.

In his third assignment of error, defendant makes an unpreserved argument that the trial court erred when it imposed a 200-month incarceration term on Count 7, first-degree unlawful sexual penetration. Under ORS 137.700 (2)(a)(N), that conviction carries a mandatory-minimum sentence of 100 months of incarceration. Defendant notes, correctly, that when a statute—like ORS 137.700—requires a court to impose a determinate sentence, "'the sentence imposed shall be the determinate sentence *or* the sentence as provided by the [sentencing guidelines], whichever is longer.'" (Quoting ORS 137.637 (emphasis in defendant's brief).); *see also* OAR 213-009-0001(1) ("If a mandatory prison sentence is required or authorized by statute, the sentence imposed shall be that determinate sentence or the sentence under [the sentencing guidelines] rules whichever is longer."); *State v. Langdon*, 330 Or 72, 77, 999 P2d 1127 (2000) ("Under ORS 137.637, when a statute mandates a sentence of imprisonment, the trial court must impose that mandatory sentence or the sentence prescribed under the sentencing guidelines, whichever is longer.").

Here, defendant observes, the trial court determined that Count 7 would have been classified as 9-H under the sentencing guidelines and, absent ORS 137.700, the conviction on that count would have carried a maximum 38-month presumptive sentence. Under the guidelines, a sentence-enhancement factor therefore could have resulted in a maximum upward-departure term of 76 months. *See* OAR 213-008-0003(2). Because the ORS 137.700 mandatory-minimum sentence for the crime is 100 months, which exceeds the maximum possible departure sentence under the guidelines, defendant argues that no further upward departure is permissible. Thus, defendant concludes, the trial court erred by imposing a prison term of more than 100 months on Count 7. Although defendant did not make that argument in the trial court, he urges us to address the error as plain on the record and as meriting appellate review because of its gravity, which requires defendant

to serve significantly more prison time than he otherwise would.

The state does not challenge defendant's analysis, and it concedes that the trial court plainly erred when it imposed a sentence on Count 7 that exceeded both the mandatory-minimum sentence of 100 months and the maximum upward-departure sentence that the court could have imposed pursuant to the sentencing guidelines. The state also concedes that we should exercise our discretion to correct the error. We agree with the parties. The trial court plainly erred when it imposed a sentence that exceeded both the mandated statutory minimum required by ORS 137.700(2)(a)(N) and the maximum sentence permissible under the guidelines. We exercise our discretion to correct the error, given its gravity and our assessment that correction serves the interests of justice. Accordingly, we reverse and remand for resentencing.

In a supplemental assignment of error, defendant makes an unpreserved argument that the trial court failed to order a presentence report as generally is required under ORS 144.791 when a defendant is convicted of a felony sexual offense and, as happened here, a party advocates for a departure sentence.[3] The state concedes that the trial court plainly erred by not ordering a presentence report under the circumstances of this case, and we agree. The court will have an opportunity to order such a report upon remand either upon motion (under ORS 144.791(1)) or if a departure

---

[3] ORS 144.791 provides, in pertinent part:

"(1) When a person is convicted of a felony, including a felony sexual offense, the sentencing court may order a presentence report upon its own motion or upon the request of the district attorney or the defendant.

"(2) The sentencing court shall order a presentence report if the defendant is convicted of a felony sexual offense unless:

"(a) The defendant, as part of the same prosecution, is convicted of aggravated murder;

"(b) The felony sexual offense requires the imposition of a mandatory minimum prison sentence and no departure is sought by the court, district attorney or defendant; or

"(c) The felony sexual offense requires imposition of a presumptive prison sentence and no departure is sought by the court, district attorney or defendant."

sentence is sought on any count that would trigger the mandatory requirement for a report under ORS 144.791(2).

Reversed and remanded for resentencing; otherwise affirmed.